# TERRITORY OF HAWAII *v.* JOHN H. POTTIE.

APPEAL FROM DISTRICT MAGISTRATE, HONOLULU.

SUBMITTED MAY 11, 1908.                    DECIDED JUNE 19, 1908.

HARTWELL, C.J., WILDER AND BALLOU, JJ.

CONSTITUTIONAL LAW—*statute regulating practice of veterinary medicine.*

> A statute regulating the practice of veterinary medicine and requiring veterinaries to be licensed, which is applicable only to a town and suburbs with a population of over 5000 inhabitants, is unconstitutional and void.

OPINION OF THE COURT BY WILDER, J.

This is an appeal by defendant on points of law from a decision of the district magistrate of Honolulu convicting him of practicing veterinary medicine without a license in a town and suburbs of over 5000 inhabitants contrary to act 40 of the Laws of 1905. He claims that the act is unconstitutional in that it violates section 1 of the 14th amendment to the Constitution by discriminating against persons engaged in the same business or profession and denying to them the equal protection of the laws.

In the discussion of this question it is only necessary to quote Secs. 1, 4 and 6 of the act, which are as follows:

"Section 1. No person shall practice veterinary medicine, surgery or dentistry, as a profession, in any town and suburbs with a population of over 5000 inhabitants in the Territory of Hawaii, either gratuitously or for pay, or shall offer to so practice, or shall advertise or announce himself publicly or privately as prepared or qualified to so practice without having first obtained from the Treasurer under the seal of his Department, a license in form and style substantially as in this Chapter set forth.

"Provided, however, that nothing in this Act shall be construed to prevent the medical, surgical or dental treatment of stock by the owners or the employees of owners or by neighbors who do not assume to be practitioners of veterinary medicine, surgery or dentistry or by members of the medical profession in cases of emergency, and

"Provided further, that this Act shall not apply to commissioned Veterinary Surgeons of the United States Army.

"Section 4. No applicant for a license to practice veterinary medicine, surgery and dentistry, shall be examined unless he shall have paid to the Treasurer a fee of Ten ($10.00) Dollars.

"Section 6. Any person who shall practice veterinary medicine, surgery or dentistry, as a profession in any town and suburbs with a population of over 5000 inhabitants in the Territory of Hawaii, or who shall offer or attempt to so practice, or shall advertise or announce himself, either publicly or privately, as prepared or qualified to so practice, contrary to the provisions of Section 1 of this Act, or whose license to so so practice shall have been revoked according to law shall be guilty of a misdemeanor, and shall be liable, on conviction, to a fine of not more than Two Hundred and Fifty ($250) Dollars."

That the legislature may regulate the practice of veterinary medicine by requiring licenses of those who desire and are found qualified to engage in it and prohibiting the practice without such a license, and that in so doing it may classify such persons, so long as it is done fairly and reasonably, are propositions which are conceded by the defendant. But it is insisted that this act cannot stand because it established an unreasonable and purely arbitrary discrimination in prohibiting the defendant from practicing unless he procures a license and allowing others to practice without any license.

In *Barbier v. Connolly,* 113 U. S. 27, 31, it was said: "The Fourteenth Amendment, in declaring that no State 'shall deprive any person of life, liberty, or property without due process of law, nor deny to any person within its jurisdiction the equal protection of the laws,' undoubtedly intended not only that there should be no arbitrary deprivation of life or liberty, or

Territory v. Pottie, 19 Haw. 99.

arbitrary spoliation of property, but that equal protection and security should be given to all under like circumstances in the enjoyment of their personal and civil rights; that all persons should be equally entitled to pursue their happiness and acquire and enjoy property; that they should have like access to the courts of the country for the protection of their persons and property, the prevention and redress of wrongs, and the enforcement of contracts; that no impediment should be interposed to the pursuits of any one except as applied to the same pursuits by others under like circumstances; that no greater burdens should be laid upon one than are laid upon others in the same calling and condition, and that in the administration of criminal justice no different or higher punishment should be imposed upon one than such as is prescribed to all for like offences. But neither the amendment—broad and comprehensive as it is—nor any other amendment, was designed to interfere with the power of the State, sometimes termed its police power, to prescribe regulations to promote the health, peace, morals, education, and good order of the people, and to legislate so as to increase the industries of the State, develop its resources, and add to its wealth and prosperity. From the very necessities of society, legislation of a special character, having these objects in view, must often be had in certain districts, such as for draining marshes and irrigating arid plains. Special burdens are often necessary for general benefits—for supplying water, preventing fires, lighting districts, cleaning streets, opening parks, and many other objects. Regulations for these purposes may press with more or less weight upon one than upon another, but they are designed, not to impose unequal or unnecessary restrictions upon any one, but to promote, with as little individual inconvenience as possible, the general good. Though, in many respects, necessarily special in their character, they do not furnish just ground of complaint if they operate alike upon all persons and property under the same circumstances and conditions. Class legislation, discriminating against some and favoring others, is prohibited, but legislation which, in carrying out a public purpose, is limited in its application, if within the sphere of its operation it affects alike all persons similarly situated, is not within the amendment."

In *Gulf, etc., Railway v. Ellis,* 165 U. S. 150, 165, it was said:

"It is apparent that the mere fact of classification is not sufficient to relieve a statute from the reach of the equality clause of the Fourteenth Amendment, and that in all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection."

In *Orient Insurance Co. v. Daggs,* 172 U. S. 557, 562, it was said:

"It is not necessary to state the reasoning upon which classification by legislation is based or justified. This court has had many occasions to do so, and only lately reviewed the subject in *Magoun v. Illinois Trust and Savings Bank,* 170 U. S. 283. We said in that case that 'the State may distinguish, select and classify objects of legislation, and necessarily the power must have a wide range of discretion.' And this because of the function of legislation and the purposes to which it is addressed. Classification for such purposes is not invalid because not depending on scientific or marked differences in things or persons or in their relations. It suffices if it is practical, and is not reviewable unless palpably arbitrary."

"But while recognizing to the full extent the impossibility of an imposition of duties and obligations mathematically equal upon all, and also recognizing the right of classification of industries and occupations, we must nevertheless always remember that the equal protection of the laws is guaranteed, and that such equal protection is denied when upon one of two parties engaged in the same kind of business and under the same conditions burdens are cast which are not cast upon the other." *Cotting v. Kansas City Stock Yards Co.,* 183 U. S. 79, 111.

"But a statute would not be constitutional which should prescribe a class or a party for opinion's sake or which should select particular individuals from a class or locality, and subject them to peculiar rules, or impose upon them special obligations or burdens from which others in the same locality or class are exempted." Cooley Const. Lim. 481.

Territory v. Pottie, 19 Haw. 99.

These quotations contain general principles which are well understood and have been frequently approved. The usual difficulty is in the application of these rules to particular statutes. That legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate is not prohibited is but another way of saying that classification is allowable if based upon some reasonable ground. But it must be remembered that differences which would serve for a classification for some purposes do not because of that fact furnish a reason for a classification for all legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. The legislature cannot adopt an arbitrary classification, for it must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in different classes as to disclose the necessity of different legislation in respect thereto. Any law based upon such a classification must embrace all and exclude none whose condition and wants render such legislation necessary or appropriate to them as a class.

Coming to the act in question, we see that it prohibits the practice of veterinary medicine without a license in towns of over 5000 inhabitants, which is made criminal. The license only issues to an applicant after he has been examined and found to be possessed of the necessary qualifications, and for the privilege of taking this examination he must pay to the government a fee of $10 whether he gets his license or not. In all other towns and places in the Territory any one, whether possessed of the necessary qualifications or not, may practice without a license. So far as we are aware, the towns of Honolulu and Hilo are the only ones having a population of over five thousand. The act in short, then, prohibits the practice of veterinary medicine without a license in Honolulu and Hilo

and makes no provision for any other locality or part of the Territory.

This statute deals with one class of persons, namely, veterinaries, of whom some are and some are not required to be licensed and their practice regulated, depending upon whether they practice (1) in Honolulu or Hilo, or (2) elsewhere in the Territory. It is difficult to perceive any reason for this classification. It requires no more skill, experience and integrity to be a veterinary in a town of six thousand inhabitants than in one of four thousand or one thousand or any less number. This discrimination seems to be an arbitrary one permitting some and forbidding others to carry on the same business without regard to their competency or to any material difference in their situation. For the right to carry on his calling one is not, while another, who may be his equal or superior in learning, experience and ability, is required to procure a license and pay a fee of $10 therefor. It does not appear that this classification is based upon any reasonable ground which bears a proper or any relation to the subject matter of the act, and it looks like an arbitrary selection. It may be suggested that the people in towns of over five thousand inhabitants are more in need of protection from fakirs and quacks and others who are unable to procure a license than those in smaller towns, in other words, that the people in the country are better able to take care of themselves than those in the cities, but, even if that is so, it furnishes no reasonable ground of classification within the general principles referred to. It may also be suggested that no one would attempt to practice outside of the towns mentioned and consequently there is no need to provide for licensing in other parts of the Territory than Honolulu and Hilo, but we do not know that in view of the well known fact that in this Territory the great bulk of animal stock is situated outside the limits of Honolulu and Hilo. While classification by population may and often does furnish a reasonable basis

for discrimination in relation to other subjects, we cannot see how it can be considered reasonable with respect to the practice of veterinary medicine in these islands.

*Bessette v. People,* 193 Ill. 334, involved the validity of an act to regulate the practice of horseshoers and requiring them to be licensed. It applied only to cities and towns of fifty thousand inhabitants and over, but permitted cities and towns of a population between fifty thousand and ten thousand to adopt its provisions, and exempted cities and towns of less than ten thousand inhabitants. The court held that this created an arbitrary and unjust discrimination between persons engaged in the same occupation which rendered the statute unconstitutional, although it was also held to be invalid on other grounds. It was said on page 348:

"Clearly the act unjustly and unreasonably discriminates between persons engaged in the same kind of occupation. The mere fact of the location of the individual in the particular town or city forms no basis for a classification. Why should a man pursuing the business of horse shoeing who lives in a city containing fifty thousand inhabitants or over be required to take out a license while a man living in a city containing between ten thousand and fifty thousand inhabitants need not take out such license unless his city or town chooses to come under the provisions of the act, and the man who lives in a city or town containing less than ten thousand inhabitants is not obliged to take out any license at all?"

Although that was a case of horse shoeing, the principle is the same as the one in the case at bar.

A statute prohibiting stock from running at large which was applicable to counties having a population of not less than 30,000 nor more than 34,000 as well as those with a population of 55,000 and over and also to any county adjoining one of these with a population of 35,100 and over, while other counties could adopt it by a majority vote, was held invalid by reason of making an unnatural, arbitrary and capricious classification. *Sutton v. State,* 96 Tenn. 696.

An act requiring in cities of 10,000 inhabitants or over which have a system of sewer or waterworks the licensing of plumbers is invalid as it adopts an arbitrary basis of classification. *State v. Justus,* 90 Minn. 474.

See also *Murray v. Board,* 81 Minn. 359; *State v. Hinman,* 65 N. H. 103; *State v. Pennoyer,* 65 N. H. 113.

Without going into the other matters discussed we are satisfied that the act is unconstitutional.

Judgment reversed, defendant discharged.

*C. R. Hemenway, Attorney General,* and *E. W. Sutton, Deputy Attorney General,* for the Territory.

*Thompson & Clemons* and *A. S. Humphreys* for defendant.