## TERRITORY OF HAWAII *v.* MATSUBARA.

EXCEPTIONS FROM CIRCUIT COURT, FIRST CIRCUIT.

ARGUED NOVEMBER 9, 1909.          DECIDED NOVEMBER 19, 1909.

HARTWELL, C.J., WILDER AND PERRY, JJ.

STATUTE—*constitutional.*

> Act 96 S. L. 1907, requiring a license fee of $5 for a fishing boat with a beam of 30 inches or more, is not in conflict with Sec. 95 Organic Act, declaring the fisheries in the sea waters of the Territory not included in any fish pond or artificial enclosure free to all citizens of the United States, or under Sec. 55

prohibiting the granting of special privileges or immunities, or because it is discriminatory class legislation or unreasonably classifies boats required to be licensed or prohibits a useful occupation or denies equal and uniform protection of the law, although at the date of the act native Hawaiian outrigger canoes with a beam of less than 30 inches had mainly been replaced in fishing for profit with Japanese boats with a beam of 30 inches or more, since the act applies to all who use such boats for profit.

## OPINION OF THE COURT BY HARTWELL, C.J.

The defendant was convicted and fined $5 and costs for having on September 2, 1909, "unlawfully and wilfully used a certain boat, to wit, a certain sampan, having a beam of 30 inches or more, for the purpose of fishing for profit, without first obtaining a license for said boat as by law required, contrary to Act 96 of the laws of the Territory of Hawaii of the session of 1907." It was stipulated at the trial that the defendant used the boat for the purpose of fishing for profit without having obtained a license; that he was not a citizen but was a Japanese subject now and for many years past resident in Hawaii. The defendant offered evidence, which upon objection was ruled out, of a witness who had been a fisherman for profit here for the last thirteen years, to the effect that the witness did not think that fishing for profit could be carried on without boats; that thirteen years ago only a small number of boats used for fishing for profit were owned, manned or used by Japanese or Chinese but that native Hawaiians then used a large number of boats, mostly outrigger canoes with a beam of less than 30 inches; that Japanese and Chinese boats steadily increased in number year by year until about five years ago and have since then remained about the same in number, while the number of native boats has steadily decreased until in April 1907, the date of the act, when there were about 200 boats with a beam of 30 inches or more operated by Japanese, with the exception of two or three Chinese boats, and that no others but

Japanese and Chinese then used boats with a beam of 30 inches or more. The deputy county attorney admitted that there were more Japanese and Chinese engaged in the business of fishing for profit in boats of 30 inch beam or more than persons of any other nationality. The defendant excepted to the exclusion of the testimony and to the judgment as contrary to law. He contends that Act 96 is unconstitutional and void under Sec. 95, Organic Act, repealing the laws of the Republic of Hawaii, which conferred exclusive fishing rights upon any person and declaring that the fisheries in the sea waters of the Territory not included in any fish pond or artificial enclosure shall be free to all citizens of the United States, and under Sec. 55 which prohibits granting special privileges or immunities, and that the act is in violation of the fourteenth amendment in denying equal protection of the laws to persons engaged in fishing for profit in boats of 30 inches beam or more, while those who use a boat of less than 30 inches beam are not required to pay a license, this being claimed to be an arbitrary and unreasonable classification.

Sec. 95, Organic Act, repealed "all laws of the Republic of Hawaii which confer exclusive fishing rights upon any person or persons" and declares that "all fisheries in the sea waters of the Territory of Hawaii not included in any fish pond or artificial enclosure shall be free to all citizens of the United States, subject, however, to vested rights; but no such vested right shall be valid after three years from the taking effect of this act unless established as hereinafter provided," and Sec. 96 provided procedure for establishing such vested rights and for their condemnation, when established, "to the use of the citizens of the United States."

We do not infer from this legislation that congress intended that the business of fishing for profit in the sea waters of the Territory should be free from police regulation or taken out of the taxing power of the Territory, the object of the provisions

cited being to do away with exclusive private rights of fishery in those waters. In this view there is no occasion to consider the defendant's claim that the act deprives him of treaty rights.

The defendant claims that the act cannot be justified as a police measure and if justifiable at all it is upon the ground that it is as a law for raising revenue; that the occupation of fishing for profit being not only an innocent one but beneficial to the public in supplying it with beneficial and necessary food "it is beyond the power of the legislature to make the act criminal or to punish the act of fishing for profit as a criminal offense." His brief says:

"The principal object of the Act in question is to discourage Orientals from following the occupation of fishing for profit, and encourage others to do so. It is an Act of discrimination against Orientals, and in favor of others engaged in the same occupation, and, in this view, it is unconstitutional within the rule laid down by the Supreme Court of this Territory, in the case of Territory v. Ah Choy, 17 Hawaiian, 331."

In that case we refer to the duty of the court to consider the real motive of such police ordinances and to declare them void "when it is apparent that they are based upon anti-Chinese grounds and are a device for removing the competition or the presence from the community of persons of Chinese nationality," citing with approval *Yick Wo* v. *Hopkins,* 118 U. S. 356; *Ho Ah Kow* v. *Nunan,* Fed. Cas. 6546, and *State* v. *Taft,* 118 N. C. 1190. But we held that the "14th Amendment is not intended to secure immunity from such practice on the sole ground that it is indulged in by Chinese only."

Many citations are made and relied upon by the defendant in support of his contention that the act is "discriminatory and amounts to unequal taxation" in that it "taxes some boats used for a special purpose and not others used for the same purpose" and that "it was intended to help one class of people and impose a burden upon another class following the same occupa-

tion." As stated in *Territory* v. *Pottie,* 19 Haw. 99, which is also cited:

"These quotations contain general principles which are well understood and have been frequently approved. The usual difficulty is in the application of these rules to particular statutes. That legislation which is limited either in the objects to which it is directed or by the territory within which it is to operate is not prohibited is but another way of saying that classification is allowable if based upon some reasonable ground. But it must be remembered that differences which would serve for a classification for some purposes do not because of that fact furnish a reason for a classification for all legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. The legislature cannot adopt an arbitrary classification, for it must be based on some reason suggested by such a difference in the situation and circumstances of the subjects placed in different classes so as to disclose the necessity of different legislation in respect thereto. Any law based upon such a classification must embrace all and exclude none whose condition and wants render such legislation necessary or appropriate to them as a class."

But the fact that at the date of the act mainly Japanese and Chinese used boats of the kind requiring a license does not of itself justify the inference that the act was aimed against Japanese or Chinese for it embraces persons of all nationalities who engage in the business of fishing for profit in such boats. The act imposes license fees upon custom house brokers and the fact that no Orientals are brokers would not show that whites had not uniform protection of law. So of the vocation of barbers, garage keepers, etc., named in this act, their race or nationality would be immaterial.

The reason for requiring boats of the precise size named to be licensed and exempting those of smaller dimensions is not apparent, but the object of placing any limit upon their size might well be that it would be injurious to the public interest to allow unlimited fishing and it does not appear that the limit

named is unreasonable, or, it might well be, in view of the dif-
ference in the fishing capacity of the two classes of boats, to
place the burden of taxation upon those best able to bear it.

The cases cited by the plaintiff, taken from 25 Cyc., 603
et seq., sustain the statements that the legislature may "for the
purpose of revenue impose a license tax on any business or occu-
pation whatsoever and the validity of the act or ordinance im-
posing the tax will be upheld by the courts;" that "an act or
ordinance imposing a license purely for regulation will be up-
held unless it appears that the occupation or business taxed is of
such a nature as not to require regulation of supervision" (p.
604), although the tax "must not amount to a prohibition of
any useful or legitimate occupation if levied under the police
power;" that (p. 606) "if the tax is uniform as to all persons
engaged in the particular business or avocation taxed    *    *    *
the constitutional requirement of uniformity is not violated;"
that "it is well settled that imposing a license tax and classifi-
cation for such tax according to the amount of business done or
according to the amount of capital employed therein does not
offend the constitutional provision that requires uniformity of
taxation," and (p. 609) that "the fact that the license tax on
a given occupation may be graduated by valuation does not make
it a proper tax or invalidate the act or ordinance imposing it."
Thus license fees are sustained which distinguish between
wholesaler and retailer. *Knisely* v. *Cotterel,* 196 Pa. 614;
*Commonwealth* v. *Clark,* 195 Pa. 634, and in *Morgan* v. *Com-
monwealth,* 98 Va. 812 (35 S. E. 448), where the licenses were
distinguished as to fishermen according to the depth of the
water in which they fished; *Howland* v. *Chicago,* 108 Ill. 496,
taxing livery stable keepers in proportion to the number of car-
riages kept for hire; *Fulgum* v. *Nashville,* 76 Tenn. 635, im-
posing a fee on hotel keepers of $40 and one per cent. of the
rental value of the hotel if having not less than ten rooms;
*State* v. *French,* 17 Mont. 54, sustaining a statute imposing a

Territory v. Matsubara, 19 Haw. 641.

license fee of $25 on a male laundryman employing one or more persons, while imposing a fee of but $15 for a steam laundry, was sustained notwithstanding the fact that Chinamen were engaged in hand laundry business.

None of the plaintiff's citations appear to be in conflict with those above mentioned.

We cannot say that the act under consideration is void as discriminatory class legislation or for unreasonably classifying boats required to be licensed or for prohibiting a useful occupation or denying to the defendant equal and uniform protection of the law, or that it conflicts with Secs. 55 or 95 of the Organic Act or with the fourteenth amendment of the United States constitution.

Exceptions overruled.

*F. W. Milverton, Deputy City and County Attorney (J. W. Cathcart, City and County Attorney* with him on the brief), for the Territory.

*R. P. Quarles (Atkinson & Quarles* on the brief) for defendant.