## TERRITORY *v.* MILLS ARMSTRONG, EDWIN H. KILSBY, NATALIE R. BRACKLIN, JOSEPH A. KILSBY AND RUTH McANALLY.

## No. 1568.

### EXCEPTIONS FROM CIRCUIT COURT FIRST CIRCUIT.
### HON. J. J. BANKS, JUDGE.

ARGUED NOVEMBER 21, 1924.          DECIDED DECEMBER 10, 1924.

### PETERS, C. J., PERRY AND LINDSAY, JJ.

CONSTITUTIONAL LAW—*unequal punishment.*

Sections 4144 and 4145, R. L. 1915, which define and fix the punishment for the offense of adultery do not deny to persons the equal protection of the laws by reason of the lighter punishment prescribed for female offenders.

SAME—*classification by reason of sex.*

A classification on the basis of sex for the purpose of assessing punishment of persons convicted of adultery is reasonable and does not deny to the male offender the equal protection of the laws.

#### OPINION OF THE COURT BY LINDSAY, J.

Defendants were charged with conspiracy in the third degree, it being alleged in the indictment that they "did maliciously and fraudulently combine and mutually undertake and concert together to instigate one D. B. Straus, he being then and there a married man, to unlawfully have sexual intercourse with the said Ruth Mc-Anally, she being then and there an unmarried woman." Each of the defendants demurred to the indictment and upon the overruling of the demurrers have, by leave of court, brought the matter here on an interlocutory bill of exceptions.

The errors relied upon by defendants are (1) that the indictment did not inform the defendants sufficiently or

at all of the charge they were called upon to meet, in that the indictment did not particularize with what type of instigation under the statute the defendants were charged; (2) that the indictment did not charge them with any offense because if it made a charge it was of a conspiracy to instigate to the commission of adultery; and (a) the Hawaiian statute of adultery is void as being in violation of the Constitution requiring equal punishment, since the statute provides for a distinct and unequal punishment between men and women; and (b) that even if adultery is a crime under the Hawaiian statutes it is not one to which there can be instigation under our Hawaiian statutes, and so a charge of conspiracy to instigate to the commission of adultery would not be a charge of a conspiracy to commit an offense under the Hawaiian statutes.

Taking up the constitutional question first, it is argued that the indictment does not charge defendants with any crime, for the reason that sections 4144 and 4145, R. L. 1915, which purport to define and fix a penalty for the offense of adultery, are unconstitutional and void in that a higher punishment is fixed for the male offender than for the female, which discrimination violates the provision of the Fourteenth Amendment to the Constitution forbidding any State to deny to any person the equal protection of the laws.

The Fourteenth Amendment in express terms applies only to States, and it has never, so far as we are aware, been decided that it also applies to Territories. Assuming, however, but not deciding, as we did in *Territory* v. *Takanabe, et al.,* 28 Haw. 43, that the Fourteenth Amendment does apply and that, even if it does not, the provisions of Article V of the Amendments afford to the defendants the same constitutional guaranties which they invoke under the provisions of the Fourteenth

Amendment, it was conceded in the oral argument by the county attorney, that the Territory, even without the provisions of the Fourteenth Amendment could not "deny to any person within its jurisdiction the equal protection of the laws," and if it be found that the provisions of the statute defining and fixing punishment for the offense of adultery offend in this respect, it will be our duty to find the same void and unconstitutional.

The sections of the statute now urged to be unconstitutional read as follows:

"Sec. 4144. Adultery defined. Sexual intercourse between a man, married or unmarried, and a married woman not his wife, is adultery by each; and between a married man and an unmarried woman, is adultery by each.

"Sec. 4145. Punishment. Every man who commits adultery shall be punished by a fine not exceeding one hundred nor less than thirty dollars, or by imprisonment at hard labor not more than twelve nor less than three months, or by both fine and imprisonment within the aforementioned limits in the discretion of the court; and every woman who commits adultery shall be punished by a fine not exceeding thirty nor less than ten dollars, or imprisonment at hard labor not more than four nor less than two months, in the discretion of the court."

The contention of defendants is that, granting that classifications by sex are sometimes permissible without violating the equal protection rule, such classification is not justifiable in the case of the offense of adultery where both of the offenders are equally guilty; indeed the defendants go farther and assert that from ancient times it has always been considered that the adulteress was more blameworthy than the adulterer, and that at common law the offense of the male was considered a "mere moral lapse," while the adulteress was a more grave offender in that she ran the risk of bringing in spurious issue to taint the line of inheritance. However this may be

and whatever may have been the opinion of our forebears as to which of the erring ones more guilt was imputable, the legislature of the Kingdom of Hawaii was evidently convinced that, of the two, the woman was the less to blame and merited a less degree of punishment.

It is the general rule that punishment for the same offense must be uniform for all persons in the same class, and that a statute is void as a denial of the equal protection of the laws which prescribes different punishments or different degrees of punishment for the same act committed under the same circumstances by persons in like situation. "This does not prevent the legislature, however, from providing a special punishment for a special class of offenders, as, for example, guardians, minors, convicts, and habitual offenders, provided no discrimination is made between persons of the same class committing like offenses." (12 C. J., p. 1187, Sec. 955.) And in this jurisdiction, as in all of the States, laws are to be found in which the legislature has prescribed different and distinct punishments for different classes of offenders, for example, minors and second offenders, which discriminations have uniformly been held to be within the legislative power and not to offend against the equal protection rule. The general rule is that, for the purpose of legislation, the legislature may divide persons affected thereby into classes, provided such classification is not arbitrary or capricious but is based upon valid reasons and distinctions. Not all discrimination between classes is prohibited, but "the selection" (of classes) "in order to become obnoxious to the Fourteenth Amendment must be arbitrary and unreasonable, not merely possibly, but clearly and actually so." Watson on Const., Vol. 2, p. 1637. "So long as such discrimination finds support in a condition of affairs from which classification would naturally result such dis-

crimination is reasonable. It is only unreasonable discrimination that comes within the constitutional inhibition." *Territory* v. *Takanabe, supra,* p. 45. "But it must be remembered that differences which would serve for a classification for some purposes do not because of that fact furnish a reason for a classification for all legislative purposes. The differences which will support class legislation must be such as in the nature of things furnish a reasonable basis for separate laws and regulations. The legislature cannot adopt an arbitrary classification, for it must be based on some reason suggested by. such a difference in the situation and circumstances of the subjects placed in different classes as to disclose the necessity of different legislation in respect thereto." *Territory* v. *Pottie,* 19 Haw. 99, 103. "In all cases it must appear not only that a classification has been made, but also that it is one based upon some reasonable ground—some difference which bears a just and proper relation to the attempted classification—and is not a mere arbitrary selection." *Gulf, Colorado & Santa Fe R'y* v. *Ellis,* 165 U. S. 150, 165.

The legislature having, in fixing punishment for the crime of adultery, classified the persons to be punished into two classes, male and female, it becomes necessary to determine whether such classification, based as it is on sex alone, is a reasonable one. The adultery statute now complained of has been in existence in these islands for nearly sixty years or, to be exact, since June 2, 1866, when it was enacted by the legislature of the then Kingdom of Hawaii, and for all these years the courts, in sentencing parties convicted of adultery, have followed the mandate of the legislature and meted out less severe punishment to the female than to the male offender. So far as we have been able to discover, it has never been urged before the courts that, because of the inequality of the .

prescribed punishment, the male offender is denied the equal protection of the laws and the statute for that reason void. Is the classification in question an arbitrary and unreasonable one? For the punishment of the crime of adultery is it permissible that a discrimination, based solely on sex, may be made? With the wisdom of the discrimination we are not concerned for, if the power to make such a discrimination existed, the expediency thereof was exclusively within the province of the law-making body. We may, however, in an endeavor to ascertain whether the classification is a natural one, look for reasons which may have induced the legislature to make it. At the time of the passage of the Act the whaling industry was at is height, bringing thousands of sailors flushed with their earnings into our island ports, and it requires no stretch of the imagination to presume that these lusty men, fresh from long sea voyages, were not backward in their attentions to the women. We are fortunately not altogether in the dark as to, at least some of, the reasons that actuated the legislature, for the Hawaiian Gazette, under date of June 2, 1866, contains the following account of the debate in the legislature over the enactment of the law in question: "Mr. Kahulu contended the bill was unconstitutional because the fine in the case of the man and the woman was not the same. He thought that in the majority of cases the women were worse than the men, and if they looked in the newspapers they could always see plenty of advertisements for wives who had run away from their husbands, and why should women be fined less than men when they were just as bad or worse. The Constitution said that the King conducted his government for the common good of all and not for any particular class. Mr. Kamalu advocated the passing of the bill. There were many foreigners who took away the wives of natives and

because they were rich could prevent the husbands from obtaining their right. Mr. Rhodes said some members said that the bill was unconstitutional and unjust because the fine was unequal in the case of a man and a woman. He was surprised to hear anyone with the attributes of a man desire to see the infliction of the same punishment on a man and woman. This bill was for the protection of members' wives and daughters as well as those of other citizens and he was at a loss to know why they came forward and opposed it. Women had not the same means of paying fines that men had. He hoped therefore that the members would have some pity for the poor women who were the weaker sex. and needed the protection of the stronger. Mr. Harris" (at that time attorney general and as such *ex officio* a member of the legislature, and later chief justice of this court) "said the doctrine that the bill is unconstitutional is unsound. You make the fine unequal between man and woman. They had reason for this, and would have omitted the fine altogether in the case of a woman if the House would have seconded it. They wished to induce husbands and parents to come forward and complain without the fear of subjecting themselves to punishment. What they wished to show was that a man's house was sacred and to bring to justice those who went about invading their neighbors' houses for the purpose of corrupting its women whilst the husband was absent at his work in the fields. The family home for which a man worked must be protected by every possible means. The young girls of the Nation were its hope and unless they were brought up virtuously the Kingdom must sink into the depths of the ocean."

From the foregoing it is clear that the legislators, in making the discrimination between sexes, did not do so in an arbitrary manner but, for the purpose of classification, took into consideration what, in their judgment,

were cogent reasons for the distinction. As was re-marked in the debate, "There were many foreigners who took away the wives of natives and because they were rich could prevent the husbands from obtaining their right. * * * Women had not the same means of paying fines that men had. * * * Women * * * were the weaker sex and needed the protection of the stronger;" and other reasons than these discussed in the debate easily suggest themselves. It may have occurred to the legislators that in the majority of adultery cases it was a well-known fact that the man was the aggressor, the "hunter," and while section 4144, R. L. 1915, makes sexual intercourse between parties one, at least, of whom is married, the adultery of each of the parties, the fact that the following section fixes a lesser punishment for the female, clearly indicates that of the two offenders, the legislature considered the woman the lesser and for that reason merited a lighter punishment. Furthermore, it may well have been considered that, in cases of this nature, the punishment of the woman, aside from any further punishment that might be prescribed by law, was already much more severe than that of the man, for in her case, besides the loss of her virtue and the ostra-cism attached to the wearer of the "scarlet letter," she ran the risk of becoming pregnant and forced to bear the burden of rearing an unwelcome intruder. Again, it may have been thought that, for physical reasons, confinement in prison worked more hardship upon a woman than on a man and, therefore, for humane reasons the term of imprisonment prescribed for women should be lighter.

We are fully aware that the trend of recent legislation has been to put women in all respects on equal footing with those of the opposite sex but, granting all this, the distinction between the sexes remains. Men and women remain men and women forever. As stated by Mr. Justice

Holmes in *Adkins* v. *Children's Hospital,* 261 U. S. 525, at page 569: "It will need more than the Nineteenth Amendment to convince me that there are no differences between men and women, or that legislation cannot take those differences into account. I should not hesitate to take them into account if I thought it necessary to sustain this act." And the court in *Ex parte Smith and Keating,* 38 Cal. 702, 711, in speaking of classifications on the basis of sex, under the requirement that all laws of a general nature should have uniform operation, said: "It was not intended to overturn the laws of nature, or disturb the relations of cause and effect, or obliterate distinctions where from the very nature and necessity of things distinctions must exist. It was not intended that all differences founded upon class or sex should be ignored. This must be so from the very nature of things, and from the universal custom and practice of lawmakers."

Nature itself has made this broad classification of mankind, and, as we are told in Holy Writ, when God created man, "male and female created he them;" and down the centuries this classification has been the rule—not always, it is true, to the advantage of the woman. A note to *Hechinger* v. *Maysville,* 49 L. R. A. 114, contains the following: "Classification based upon reasonable differences between the classes created is never regarded as a violation of the constitutional guaranties of equal privileges and immunities. Classification is unconstitutional only when it is arbitrary and not based upon any essential differences. The classification of citizens into the two great classes of men and women is made by nature, and its recognition by law does not seem to be unreasonable or to constitute any unjust discrimination when it is made only in respect to matters in which the sex of the individual is a material factor."

There is in the law of nature as well as of civilized society a marked distinction between men and women and this distinction may well be taken into consideration by the legislature in fixing punishment for the crime of adultery, both in determining the method of inflicting punishment and in limiting its quantity and duration. Keeping in mind the rule that all presumptions are in favor of the validity of legislative acts, that all doubts as to the constitutionality thereof should be resolved in favor of the act, and that the courts are not justified in rendering such acts nugatory unless they clearly and palpably violate the provisions of the Constitution, we are of the opinion that the statute fixing a lesser penalty for women convicted of adultery than for men is not an arbitrary or unreasonable discrimination, and we cannot perceive that the defendants herein are denied the equal protection of the laws, for every person in his or her respective class convicted of a similar offense would be subject to the same punishment.

The remaining exceptions have no merit. A conspiracy as defined by section 4076, R. L. 1915, under which defendants are charged is "a malicious or fraudulent combination or mutual undertaking or concerting together of two or more, to commit any offense or *instigate* any one thereto    *    *    *." The charge in this case is a conspiracy by defendants to "instigate" one person to commit an offense, and it is the contention of defendants that the use of the word "instigate" without setting forth in more detail the method of instigation resorted to does not sufficiently inform defendants as to the charge they are called upon to meet. The statute defining conspiracy does not attempt to define the word "instigate," and it would seem that the word has so clear and unambiguous a meaning as to require no further or better definition. Section 3681, R. L. 1915, which prescribes that "whoever

instigates another to the commission of any offense, by commanding, soliciting or offering to hire, or otherwise endeavoring to induce him to commit the same, shall be subject to the penalty of an attempt to commit such offense," does not define the meaning of the word "instigate" as applied to a charge of conspiracy. We are of the opinion that the charge, based as it is on the language of the statute, is sufficiently clear and explicit to inform defendants of the charge against them.

The exceptions are overruled.

*H. E. Stafford,* Deputy City and County Attorney (*W. H. Heen,* City and County Attorney, with him on the brief), for the Territory.

*J. D. Flint* (*H. Hathaway* with him on the briefs) for defendant Mills Armstrong.

*Marguerite K. Ashford* (*Thompson, Cathcart & Beebe* and *C. M. Hite* with her on the briefs) and *J. B. Poindexter* for defendants Edwin H. and Joseph A. Kilsby.

*A. D. Larnach* for defendant Ruth McAnally submitted the case upon the briefs.