# AUTO RENTAL COMPANY, LIMITED, *v.* WILLIAM W. LEE AND LEE & AWANA, LIMITED.

## No. 2369.

ARGUED NOVEMBER 21, 1938.　　　　DECIDED JULY 21, 1939.

COKE, C. J., PETERS, J., AND CIRCUIT JUDGE LE BARON
IN PLACE OF KEMP, J., DISQUALIFIED.

OPINION OF THE COURT BY PETERS, J.

This is a bill in equity brought under section 7459-F of the Fair Trade Act of Hawaii by the proprietor of a gasoline station to enjoin a competitor and the president-manager of the latter from advertising, offering for sale or selling Associated gasoline at prices less than the respective prices stipulated in a contract entered into pursuant to the provisions of the Act between the Tide Water Associated Oil Company, hereinafter referred to as "the oil company," the wholesale distributor of said gasoline and the alleged wrongdoer.

From a decree granting a permanent injunction as prayed, the respondents appealed.

The Hawaii Fair Trade Act is Act 212 of the Laws of

1937 and is incorporated into the Revised Laws of Hawaii, 1935, as chapter 242-A, sections 7459-A to 7459-H, both inclusive. Those portions of the Act pertinent to the issues are quoted in the margin.[1]

It is undisputed that during all of the times involved the oil company sold and distributed at wholesale in the City and County of Honolulu gasoline known to the trade. and generally referred to as "Associated gasoline"; that Associated gasoline was of two grades, each grade being identified by the oil company by a distinctive trade name and symbol; that the oil company was the owner of the

---

[1] "Sec. 7459-B. Contract of sale or resale; validity. No contract relating to the sale or resale of a commodity which bears, or the label or container of which bears, the trade mark, brand, or name of the producer or distributor of such commodity and which commodity is in fair and open competition with commodities of the same general class produced or distributed by others shall be deemed in violation of any law of the Territory by reason of any of the following provisions which may be contained in such contract:

"(a) That the buyer will not resell such commodity at less than the minimum price stipulated by the seller;

"(b) That the buyer will require of any dealer to whom he may resell such commodity an agreement that he will not, in turn, resell at less than the minimum price stipulated by the seller;

"(c) That the seller will not sell such commodity:

"(1) To any wholesaler, unless such wholesaler will agree not to resell the same to any retailer unless the retailer will in turn agree not to resell the same except to consumers for use and at not less than the stipulated minimum price, and such wholesaler will likewise agree not to resell the same to any other wholesaler unless such other wholesaler will make the same agreement with any wholesaler or retailer to whom he may resell; or

"(2) To any retailer, unless the retailer will agree not to resell the same except to consumers for use and at not less than the stipulated minimum price."

"Sec. 7459-D. Owner or authorized distributor to establish price. No. minimum resale price shall be established for any commodity, under any contract entered into pursuant to the provisions of this chapter, by any person other than the owner of the trade mark, brand or name used in connection with such commodity or a distributor specifically authorized

names and symbols employed by it to identify its gasoline; that the uniform agreement of sale hereinafter referred to expressly recited that it was entered into pursuant to the Hawaii Fair Trade Act and contained the covenant, in respect to the trade names and symbols used by it to identify its gasoline, quoted in the margin;[2] that in all gasoline service stations selling Associated gasoline in the City and County of Honolulu the identifying names and symbols so employed were plainly, permanently and visibly inscribed upon pumps attached to and connected with tanks in which the gasoline to which the names and symbols referred was contained and by means of and through which the gasoline was withdrawn from the tanks when sold.

It is conceded that the corporate appellant and the appellee operated competing gasoline service stations in the city of Honolulu proper where there was offered for

---

to establish said price by the owner of such trade mark, brand or name."

"Sec. 7459-F. Unfair competition may be actionable. Wilfully and knowingly advertising, offering for sale or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of this chapter, whether the person so advertising offering for sale or selling is or is not a party to such contract, is unfair competition and is actionable at the suit of any person damaged thereby."

"Sec. 7459-G. Inapplicable to certain contract. This chapter shall not apply to any contract or agreement between or among producers or, except as provided in subdivision ₀(c) of section 7459-B between or among wholesalers, or between or among retailers, as to sale or resale prices."

[2] "Buyer agrees to resell gasoline purchased hereunder only under Associated's names, trade marks and brands, and through pumps and containers properly marked with said names, trade marks and brands. Associated in its uncontrolled discretion, may at any time change the brand name or any distinctive designation of any of its products. Should it do so, this contract shall be deemed to cover products of the new names or designations to the same extent as if said names or designations were specifically set forth herein."

sale Associated gasoline of both grades supplied them by the oil company.

It is further undisputed that the oil company on October 1, 1937, elected to avail itself of the protection afforded by the provisions of the Fair Trade Act and thereupon adopted the policy of establishing and maintaining uniform prices for its gasoline when sold at retail at gasoline service stations in the City and County of Honolulu and to that end prepared and distributed to the proprietors of all gasoline service stations, operating in said city and county and selling its gasoline at retail, including the corporate appellant and appellee, a proposed form of contract to be thereafter uniformly employed by it and to exclusively reflect the contractual relations existing between the oil company and the proprietor of each service station executing the same relating to the sale to such proprietor of Associated gasoline and resale of the same by the latter at retail; that the proposed agreement to sell contained the resale price restrictions quoted in the margin.[3]

It is also undisputed that on October 1, 1937, contracts in the form adopted and promulgated were separately executed between the oil company and a majority of the proprietors of gasoline service stations, operating in the City and County of Honolulu, supplied with Associated gasoline by the oil company, including both the corporate

---

[3] "Pursuant to the Fair Trade Act of the Territory of Hawaii Buyer agrees not to sell or to offer or advertise for sale any products purchased hereunder at less than Associated's posted authorized selling price for said products and type of sale in effect at time and place of resale. Said Fair Trade Act provides that it is unfair competition, actionable at the suit of any person damaged thereby, to wilfully and knowingly advertise, offer for sale or sell any commodity at less than the price stipulated in any contract entered into pursuant to said Act, whether the person so advertising, offering for sale or selling is or is not a party to such contract."

appellant and the appellee, and notice of the execution of said contracts was given by the oil company to all proprietors of gasoline stations in the City and County of Honolulu, selling Associated gasoline, whether parties to contracts with the oil company or not.

The trial judge found and we see no reason to disturb his findings that in February, 1938, and while the contracts executed in the previous October were in existence (except as their numbers fluctuated in course of trade), including the respective contracts between the oil company and the corporate appellant and the appellee, the corporate appellant willfully and knowingly offered for sale and sold Associated gasoline of both types at prices less than the oil company's posted authorized selling price for said gasoline at retail in effect at the time and place of resale and that as a result thereof appellee suffered and if the practice were persisted in the appellee would continue to suffer irreparable injury incapable of compensation in money damages.

No claim is made that at the time the contracts with the several proprietors of gasoline stations in Honolulu were executed the two grades of Associated gasoline, identified by the names and symbols referred to, were not in fair and open competition with gasoline of the same general classes produced or distributed by others. Nor was it contended that the legal relationship between the oil company and noncontracting proprietors of gasoline service stations supplied with and selling Associated gasoline at retail was other or different from that reflected by the several subsisting contracts between the oil company and the contracting gasoline service station proprietors. No question of a monopoly or of the fairness or reasonableness of the prices posted in February, 1938, has been interjected into the case.

Appellants specify in their briefs ten assignments of

error. Those not discussed by us, though considered, have been found to be without merit.

Appellants contend that section 7459-A and section 7459-F offend the due process clause of the fifth amendment of the Constitution of the United States and are inconsistent with the provisions of the Act of Congress of July 2, 1890, known as the Sherman Antitrust Act (26 Stat. L., ch. 647, p. 209), as amended by the Act of Congress of August 17, 1937 (50 Stat. L., T. 8, ch. 690, § 1, pp. 673, 693), and hence invalid. The United States supreme court, in the cases of *Old Dearborn Co.* v. *Seagram Corp.,* 299 U. S. 183, and *Pep Boys* v. *Pyroil Sales Co.,* 299 U. S. 198, which involved the constitutionality of the Illinois and California fair trade Acts, held adversely to appellants' contentions. The sales in those cases, similarly as in the instant case, involved "intrastate" sales and under the decisions referred to further consideration of appellants' objections in that regard becomes unnecessary.

Nor do the grounds urged against the validity of sections 7459-A and 7459-F occasion any serious doubt. By section 55 of the Organic Act the legislative power of the Territory extends "to all rightful subjects of legislation not inconsistent with the Constitution and laws of the United States locally applicable." The purpose of the Fair Trade Act, as expressed in its title, is the "regulation of fair trade by giving protection to trade mark owners, producers and the general public, against injurious and uneconomic practices in the distribution of certain commodities"; clearly an exercise by the legislature of its police powers. (*Triner Corporation* v. *McNeil,* 363 Ill. 559, 2 N. E. [2d] 929.) This court has repeatedly held that laws passed by the legislature in the exercise of its police powers were "rightful subjects of legislation" within the meaning of that term as employed in section 55 of

the Organic Act. (*Territory* v. *Fung,* 34 Haw. 52; *Campsie* v. *Catton, Neill & Co.,* 26 Haw. 737, 740; *Ter.* v. *Mc-Candless,* 24 Haw. 485, 490, 491; *In re Kalana,* 22 Haw. 96, 103; *Territory* v. *Makaiwi,* 21 Haw. 631, 633; *In Re Craig,* 20 Haw. 483, 490.) Moreover, no inconsistency exists between the provisions of sections 7459-A and 7459-F and the provisions of the Sherman Antitrust Act, as amended. The remedy afforded by section 7459-F has no parallel in the Sherman Antitrust Act, as amended, or as supplemented by the Clayton Act of 1914 (38 Stat. L., ch. 323, p. 730. See *General Inv. Co.* v. *Lake Shore Ry.,* 260 U. S. 261, 286). Before it may be said that a law passed by the territorial legislature is inconsistent with a law of the United States, it must appear that there exists a "substantial conflict between the pertinent provisions of the two statutes." *Puerto Rico* v. *Shell Co.,* 302 U. S. 253, 263. (See *Territory* v. *Makaiwi, supra*; *Territory* v. *Hoy Chong,* 21 Haw. 39; *Territory* v. *Matsubara,* 19 Haw. 641.)

Upon comparison of the territorial and federal Acts, it is apparent that a subject matter common to both is contracts relating to the sale or resale of trade-marked articles in free and open competition with articles of the same general class produced or distributed by others containing resale price restrictions. But in both Acts such contracts are legalized, in the federal Act in respect to its antitrust provisions therein condemned and in the local Act in respect to any law of the Territory, directly or indirectly prohibiting such contracts. If contracts, legalized under the Fair Trade Act of Hawaii, are also excepted from the provisions of the Sherman Antitrust Act, as amended, obviously no inconsistency exists between the provisions of section 7459-B of the Fair Trade Act and the provisions of the Sherman Antitrust Act.

The appellants further contend that gasoline is a commodity handled in "bulk" and unless sold and resold

in a container, the label or container of which bears the trade-mark, brand or name of the producer or distributor, does not come within the provisions of section 7459-B of the Act. With this contention we cannot agree.

Appellants make no effort to explain the sense in which they use the word "bulk" and we see no occasion for analyzing the meaning or concepts of that term. Obviously if a commodity does not bear or the label or container of which does not bear the trade-mark, brand or name of the producer or distributor of the commodity, contracts relating to the sale or resale of the commodity do not come within the provisions of section 7459-B.

The Fair Trade Act is calculated to prevent price-cutting upon resale of trade-marked articles sold in competition with articles of a similar class the minimum resale price of which has been established by the producer or distributor. Unfair competition, as defined by section 7459-F, consists "not in the bare disposition of the commodity, but in the forbidden use of the trade-mark, brand or name in accomplishing such disposition." *Old Dearborn Co.* v. *Seagram Corp., supra,* p. 193. It is immaterial, therefore, whether upon the sale or resale of the commodity, the container of which bears the trade-mark, brand or name of the producer or distributor, the sale includes the container or is of the whole or of only a part of its contents, exclusive of the container. It is sufficient that there be "a forbidden use of the trade-mark, brand or name in accomplishing" the sale. In our opinion gasoline identified by the trade-mark, brand or name of the distributor plainly, permanently and visibly inscribed upon the pump attached to and connected with the tank in which the gasoline to which the emblem refers is contained and by means of and through which the gasoline is withdrawn from the tanks when sold is "a commodity * * * the * * * container of which bears, the trade mark, brand, or

name of the * * * distributor of such commodity" within the meaning of that phrase as employed in section 7459-B of the Fair Trade Act.

Appellants also contend that appellee as a retailer has not sufficient interest in the subject matter of the proceeding to sustain the bill.

Section 7459-B has to do with common law, trade-marks, brands or names. The legal effect of section 7459-B was to remove all restraints, if any existed under the laws of the Territory, against sale or resale price agreements concerning trade-marked commodities which were in fair and open competition with commodities of the same general class and to legalize provisions in such agreements by which the transferee or vendee covenants that he in turn will exact a similar contract from his vendees. Section 7459-E (not quoted) sets forth contingencies in the event of which resale price restrictions shall not control, namely, sales by an owner to close out stock or to dispose of deteriorated goods or by an officer acting under court order. Under the provisions of section 7459-G, the Act does not apply to any contract or agreement between dealers of the same class. The contracts to which section 7459-B refers are those between the owner of the trade-marks, brands or names used in connection with the trade-marked commodity or his specially authorized distributor, on the one hand, and the various dealers on the other, by or through whom successive resales are made (as the commodity passes in trade from the manufacturer or producer to the ultimate consumer such as wholesalers, jobbers and retailers) and not to contracts between manufacturers or producers or wholesalers or retailers among themselves. The former are sometimes referred to as "vertical" contracts; the latter as "horizontal" contracts. The Act, however, seeks not alone to legalize contracts containing resale price restrictions but also to bind all

dealers in the trade-marked commodity within the same competitive area and of the same class as the vendee to observe the contractual price restrictions. Under the provisions of section 7459-F, not alone is the vendee, in a contract of sale or resale entered into pursuant to the provisions of the Act, bound by the terms thereof but also all noncontracting dealers in the same competitive area of the same class as the vendee with knowledge of the terms of the subsisting contract.

In February, 1938, and at the time of the unfair competition complained of, the contract between the oil company and the appellee was in full force and effect. Moreover, it was a contract entered into pursuant to the provisions of the Fair Trade Act. Where, as here, a wholesale distributor of trade-marked gasoline elects to avail itself of the protection afforded by the Fair Trade Act and adopts a policy of establishing and maintaining uniform retail prices for its gasoline when sold at retail at gasoline service stations in the City and County of Honolulu and to that end prepares and distributes to the proprietors of all gasoline service stations, operating in that area and selling its gasoline at retail, a proposed form of agreement to sell gasoline containing resale price restrictions to be thereafter uniformly employed and to exclusively reflect the contractual relations between the oil company and each service station relating to the purchase of gasoline and its sale or resale by the vendee at retail, it is sufficient, under the provisions of section 7459-F, that but one contract in the form adopted be promulgated and executed by the oil company with a single proprietor of a gasoline service station, operating in the City and County of Honolulu and supplied with and in turn reselling Associated gasoline at retail, whereupon all dealers of the same class as the vendee in the subsisting contract, within the City and County of Honolulu, with

knowledge of the resale price restrictions thereof, are bound by the resale price restrictions contained therein, whether parties to said contract or not. The corporate appellant, similarly as the appellee, was itself bound under the provisions of section 7459-B by the resale price restrictions contained in the contract entered into by it with the oil company. Its contract in itself, similarly as the contract executed by the appellee, was sufficient to invoke the protective provisions of section 7459-F. To eliminate confusion, however, it is sufficient for our purposes to accept the contract between the appellee and the oil company as the "contract entered into pursuant to the provisions of the Fair Trade Act" within the meaning of section 7459-F and to consider what legal rights, if any, accrued to the appellee by reason of that contract and what remedy, if any, inured to it upon the interference with or the invasion of such rights.

The sales made by the corporate appellant of Associated gasoline at less than the minimum prices posted by the oil company constituted "unfair competition" as that term is defined in section 7459-F. By the same section "unfair competition" is made actionable at the suit of "any person damaged thereby." In our opinion the term "any person damaged thereby" refers to those persons the damages to whom, whether actual or apprehended, present or prospective, are the direct and proximate result of the interference with or the invasion of some property right of a pecuniary nature by the offending competitor.

The question of what property right, if any, is created and vests in a vendee by virtue of a contract of sale or resale entered into by him pursuant to the provisions of the Fair Trade Act is not free from difficulty. There is a paucity of precedent upon the subject. With but a single exception all of the cases that have had our attention involve actions by the owner of the trade-mark, his special-

ly authorized distributor or assignee. One approach to its solution is predicated upon the major premise that the contract as supplemented by the statute creates and vests in the contractual vendee and all other persons in the same competitive area similarly bound a joint interest with the owner of the trade-marks, brands or names by which the commodity subject to the contract is identified in the good will emanating from and attached to such trade-marks, brands or names. This is the theory advanced by the appellee and has judicial sanction. (See *Port Chester W. & L. Shop* v. *Miller Bros. Fruiterers,* 1 N. Y. S. [2d] 802.) Another approach and one which, in our opinion, is more consistent with the legal incidents of a contract entered into pursuant to the Fair Trade Act and the legislative intention disclosed by the expression "any person damaged thereby" is based upon the right created by the contract and statute to do business in the trade-marked commodity and to resell the same at a minimum price without interference by price-cutting competitors. Though we do not disagree with the New York court in its conclusions, we prefer to consider the rights of the appellee from the standpoint of the business relationship created by the contract and the law pursuant to which it was entered into.

As we understand the *Old Dearborn* case the property in the good will attached to the trade-marks involved was the basis of the justification of the price-fixing features of the Act against the challenge of unconstitutionality under the due process clause of the fifth amendment. The right of the plaintiff to seek the interposition of equity was not challenged. Moreover, the language of the court would seem to indicate that there was no devolution of title to the vendee of a share in the property right in good will. On the contrary, the court said: "The primary aim of the law is to protect the property—namely, the good will—

of the producer, which he still *owns.*"   (Italics supplied.)
In our opinion the words "any person damaged thereby"
may include all parties vendee in contracts entered into
pursuant to the provisions of the Fair Trade Act whether
a distributor, wholesaler, jobber or retailer.   And while it
is true that the good will attached to and emanating from
trade-marks, brands or names, by which trade-marked com-
modities are identified redound proportionately to the
benefit of each dealer involved in sales or resales as the
commodity finds its way in course of trade from the
manufacturer or producer to the ultimate consumer, we
feel we are upon firmer ground in adopting the view that
as to vendees in contracts entered into pursuant to the
provisions of the Fair Trade Act, it is upon the inter-
ference with the property right created by the contract
and the provisions of the Act rather than upon any share
or interest in the good will of the owner of the trade-mark
that their right of action under the statute is predicated.

The contract between the appellee and the oil company
was an executory agreement to sell Associated gasoline
under the terms of which for the term thereof the oil com-
pany agreed to sell and the appellee agreed to buy for the
same period the two grades of trade-marked gasoline sold
and distributed by the oil company and to resell the same
at retail under the respective trade names and marks by
which the same were identified at prices not less than the
minimum prices posted by the oil company.   That the
appellee was legally obligated under the terms of the con-
tract to sell Associated gasoline under its appropriate
trade names and marks does not affect the issue..   Upon
the subject we are now considering we are alone concerned
with the rights which accrued to the vendee under its con-
tract with the oil company.   Irrespective of the require-
ments of the contract in that regard the appellee unques-
tionably had the right to sell the two grades of Associated

gasoline under the respective trade names and marks by which they were identified. Obviously the mere contractual right to sell a trade-marked commodity does not include immunity from price-cutting. But to the contractual rights created by the contract there also accrued to the appellee the additional statutory right to sell Associated gasoline at uniform prices fixed by the oil company, sales at less than which by competitors similarly bound constituted unfair competition. In other words under the contract and statute there was created and vested in the appellee the same property rights as might accrue to it from a horizontal contract between it and proprietors of retail gasoline stations operating in the City and County of Honolulu containing mutual stipulations for retail price maintenance with the right of action in all of the parties thereto for their breach. That the statute indirectly affects that result is not our concern. There are two sides to the question of price maintenance. The policy involved is purely legislative and not judicial. Assuming that the prices posted by the oil company under the powers reserved to it under its contract are fair and reasonable, the effect is legal and proper. But it requires no extensive argument to convince even the most skeptical that the rights thus created and vested in the vendee are property rights of substantial pecuniary value.

The right to conduct a lawful business is a property right of a pecuniary nature. (*Truax* v. *Corrigan*, 257 U. S. 312, 327; *Duplex Co.* v. *Deering*, 254 U. S. 443, 465.) As said by the court in the case of *Glover* v. *Malloska*, 238 Mich. 216, 213 N. W. 107: "It would astound the business world to hold that an established business is barren of property rights of a *pecuniary nature*. Merchants, and others engaged in business, feel that they have property rights therein, and we must hold that an injury to such rights, through criminal acts, is an injury to property

rights of a *pecuniary nature.*" (Italics supplied.) Again in *Featherstone* v. *Independent Service Station Ass'n,* 10 S. W. (2d) (Tex.) 124, 126, 128: "We are of the opinion that plaintiff's business and his right to conduct the same constitute property." A trader may resort to any legitimate means to acquire the patronage of a competitor even to the extent of driving his competitor out of business. For the injury thus inflicted there is no remedy. But where the means employed constitute a legal wrong a remedy lies to vindicate the right invaded. Price-cutting is not *per se* a legal wrong. But the Fair Trade Act has made it so when committed under the circumstances prescribed. Section 7459-F has made it a nominate tort and provided a remedy against its commission.

If the actual or threatened tortious acts complained of interfere with property or rights of a pecuniary nature, equity will intervene. (*Featherstone* v. *Independent Service Station Ass'n, supra; Glover* v. *Malloska, supra; In Re Debs, Petitioner,* 158 U. S. 564, 593.) That the tortious acts complained of, in the cases cited, constituted criminal offenses under the local law is immaterial. The rule is the same. Equity will intervene to enjoin the actual or threatened interference with property rights or rights of a pecuniary nature where the tortious acts complained of, though not criminal in their nature, constitute a legal wrong such as unfair competition. In the case of *Internat'l News Serv.* v. *Asso. Press,* 248 U. S. 215, 235, 236, the court said: "The rule that a court of equity concerns itself only in the protection of property rights treats *any civil right of a pecuniary nature as a property right* * * * and the right to acquire property by honest labor or the conduct of a lawful business is as much entitled to protection as the right to guard property already acquired. It is this right that furnishes the basis of the jurisdiction in the ordinary case of unfair competition." (Italics

supplied.) Under this state of the law the conclusion is inevitable that suit lies at the instance of a vendee in a contract of sale or resale entered into pursuant to the provisions of the Fair Trade Act to enjoin unfair competition as defined by the provisions of section 7459-F.

We find further supported for our conclusion in the legislative intent indicated by the generic all-inclusive term "any" employed as an adjective to qualify the noun "person" in the phrase "any person damaged thereby." Without a statutory grant of a right of action there was available to the oil company the existing common law and equitable remedies appropriate to the redress sought. The statute creates a new right of action and the language employed is reasonably capable of the construction that the legislature intended not alone to protect the owners of trade-marks, brands or names in the good will attached to their use but all other persons parties to or bound by a contract entered into pursuant to the provisions of the Fair Trade Act against unfair competition interfering with a right of a pecuniary nature created by such contract and the provisions of the Act supplementary thereto.

Pursuant to the view herein expressed the decree appealed from is affirmed.

*J. V. Esposito* (also on the briefs) for appellants.

*G. P. Kimball* (also on the briefs) for appellee.