WATSON, Judge.
Defendants, Clifton Thibodeaux, James Howard Jones, and Turf Lounge, Ltd., have appealed from a trial court judgment which found them operating a gambling house, a public nuisance under LSA-R.S. 13:4721, on the premises of the “New Turf Lounge”. Defendant, Turf Lounge, Ltd., is a Louisiana corporation; Jones is president of the corporation and leased the property from owner Thibodeaux in the corporate name. Jones is the proprietor of the “New Turf Lounge”.
Under LSA-R.S. 13:4724(4) a permanent injunction without bond was issued enjoining both Thibodeaux and Jones from conducting the nuisance of gambling anywhere within the state. Other occupants of the premises, particularly John Moreau and Sylvia Vige, were also enjoined under the same section from conducting the nuisance of gambling. Owner-lessor Thibo-deaux was found by the trial court to have full knowledge of the gambling and an order of abatement was entered under LSA-R.S. 13:4724(5), closing the Turf Lounge for a period of one year from February 3, 1976, its use for any purpose whatsoever during that period being forbidden.
Defendants have appealed from the judgment of the trial court, contending *33 that the trial court erred in holding that defendants had violated the provisions of LSA-R.S. 13:4721.
LSA-R.S. 13:4721 defines a gambling house as:
* * * * * *
“(1) any place whatever where any game of chance of any kind or character is played for money, for wagers, or for tokens, and where the conduct of such place operates, directly or indirectly, to the profit of one or more individuals and not exclusively to the direct profit of the actual participants in such game; and
“(2) any place whatsoever where races, athletic contests and sports and games are not actually held and where opportunity is afforded for wagering upon races, athletic contests, sports and games of chance.”
“All gambling houses as herein defined are declared to be public nuisances, and the owner thereof, and the agent for such owner, or the lessee, sublessee or other occupants thereof are declared to be guilty of maintaining a public nuisance.”
This action was brought under the provisions of LSA-R.S. 13:4722 by District Attorney Goudeau on behalf of the Parish of St. Landry.
The trial court, in reasons for judgment, pointed out that both the Louisiana Constitution of 1921 in article 19, § 8, and the Louisiana Constitution of 1974 in article 12, § 6, provide for suppression of gambling, and the Constitution of 1974 also provides for definition of gambling by the legislature. Both the owner and lessee, Thibodeaux and Jones, admitted that there was gambling on the premises of the Turf, and' the only question is whether the gambling is within the purview of LSA-R.S. 13:4721. Defendants-appellants contend that the gambling did not operate to the profit of the owner and lessee but only to the profit of those participating in the games.
Among the indicia of gambling at the New Turf Lounge found by the trial court to constitute a violation of LSA-R.S. 13:4721 were:
1. Clifton Thibodeaux’s three convictions for gambling at the Turf in violation of LSA-R.S. 14:90; and
2. Two convictions of John Moreau, a blackjack dealer, for gambling at the Turf in violation of LSA-R.S. 14:90.
Defendants contend that prosecution under the criminal statute, LSA-R.S. 14:90, cannot be considered in a suit to abate the public nuisance of a gambling house. While the criminal statute, LSA-R.S. 14:90, defines gambling, LSA-R.S. 13:4721 defines the civil nuisance of maintaining a gambling house. The statutes are therefore necessarily different in their definitions. We find no error in the trial court’s consideration of convictions for gambling in determining whether or not the public nuisance of a gambling house existed on the premises of the “New Turf Lounge”. The general rule is found at 66 C.J.S. Nuisances § 48:
“A gaming or gambling house is usually considered to be a nuisance, both at common law and by force of statute.” 66 C.J.S., page 800
and
“A statute, declaring various places or premises where persons resort for the purpose of gambling a common nuisance, has been construed to cover at least all those acts of gambling specifically defined and prohibited by the penal statutes, . . .”66 C.J.S., page 801
The other evidence was as follows:
Milton Wilson, a senior state trooper, testified that he entered the New Turf Lounge on May 11, 1974, and observed a poker table and a blackjack table. A man was standing behind the blackjack table shuffling cards and said 'yes sir, blackjack right here’ (TR. 15). The trooper went to *34 the table; bought $20 worth of silver dollars with currency; played blackjack for thirty minutes; and lost $38. He was advised that a dice game was to start in a few minutes. There were no markings on the tables, and the trooper did not know what happened to the profits.
Ellis Bienvenu, also a state trooper, testified that he went to the New Turf Lounge in St. Landry Parish on May 18, 1974, in the course of conducting a vice investigation and observed a dice table in operation. A man known to the trooper, Henry Delahousse, Sr., was conducting the game and covering bets for the house. There were also two other house men at the dice table who were unknown to the trooper. One of these house men was turning the cards and the other would rake in the dice after a roll. Two customers known to the trooper played at the dice table during the course of the evening. Trooper Bienvenu did not observe anyone paying to play or any money being taken out for the house from the game. He was under the impression that the house won more than the participants while he was present.
John Newton, a lieutenant with the Louisiana State Police, testified that he supervised an investigation at the New Turf Lounge in St. Landry Parish, on May 2, 1974. Lt. Newton observed a card table and a blackjack table in a back room. Three men were playing blackjack, using silver dollars for chips. At one point, the owner of the lounge, Clifton Thibodeaux, handed the dealer a bank bag containing silver dollars. Lt. Newton did not observe any percentage being taken out of the game for the house.
Mary Pendergraft, an employee of the New Orleans Police Department, testified that she was on special assignment investigating gambling in St. Landry Parish on January 15, 1975, and went with investigator David Hunter to the Turf. In a rear room of the lounge, there was a table with three men playing cards and a blackjack table with a dealer she later identified as John Moreau. When she and Hunter approached the blackjack table, Moreau asked whether they preferred poker or blackjack and she told him blackjack. The minimum bet was $1.00; she played approximately 30 minutes. She hit 21 points or blackjack but dealer Moreau did not offer to pass the deal to her.
David Hunter, an investigator with the Louisiana Department of Justice, testified that he made a gambling investigation at the Turf in St. Landry Parish on January 15, 1975, in the company of Mary Pender-graft. His testimony was essentially the same as that of Ms. Pendergraft.
Lawrence Antoine, an investigator for the Louisiana Department of Justice, testified that he conducted a gambling investigation at the New Turf Lounge on May 22, 1975, in the company of a Louisiana state trooper. He and the trooper were served drinks and then went to the back room where they observed a blackjack table containing stacks of silver'dollars and currency. The dealer identified himself as John Moreau; Antoine played blackjack for approximately 15 minutes. Hunter returned to the premises on December 12, 1975, with Trooper Latiolais, and they purchased drinks. A white female who identified herself as Toni was dealing blackjack. Hunter exchanged $10 in bills for ten silver dollars and played blackjack approximately 10 minutes. The deal then passed to John Moreau. Hunter identified photographs in the record, taken in his presence by Trooper Waymire of the Louisiana State Police. The trial court observed that the blackjack table in the photographs is not the height of an ordinary card table but “just right for blackjack” (TR. 29).
James Edward Waymire, a trooper first class with the Louisiana State Police, identified photographs P-9—P-12 taken by him.
Lt. Louis M. Ackal, a lieutenant with the Louisiana State Police, testified that he directed a raid of the New Turf Lounge on December 17, 1975.
*35 Gerald Latiolais, a trooper with the Louisiana State Police, testified that he participated in an investigation at the New Turf Lounge on December 12, 1975, with Larry Antoine. They both ordered bourbon and water, paid for the drinks and went to the room in the rear where they observed the blackjack table pictured in P-9. Latiolais exchanged a $10 bill for ten silver dollars and then played blackjack approximately 20 minutes during which time he lost the $10.
Clifton Thibodeaux testified that he supports himself partly with gambling but denied receiving any profits from gambling at the New Turf. His rent from the New Turf was $900 per month which was his major source of income. He brought silver dollars to the tables when he was running the New Turf merely as an accommodation.
James Howard Jones testified that he leases and manages the Turf Lounge. He has no employees on a regular basis other than his wife, but employs girls from time to time to dance and tend bar. John Moreau was not an employee but came in merely to play cards. Jones frankly admitted seeing card games played in the back room, but denied dividing any profits from the game. Although he did not prohibit gambling, he said he made very little selling drinks to the gamblers.
L. B. Carriere, chief criminal deputy for the parish of St. Landry, testified that he was asked to conduct an investigation at the New Turf Lounge and went with Milton Hargroder and Otis Lomenick to take pictures of what was said to be a dice table. The pictures were taken to the district attorney and the sheriff who said that the table appeared legal.
Morton J. Goudeau, III, district attorney for St. Landry Parish, testified that the instant case is the first padlock proceeding brought by his office. District Attorney Goudeau testified that he told Thibodeaux and the sheriff that a group of people who gather to play cards among themselves are not operating in violation of the law.
Malcolm Millet, a major in the state police, testified that he had been asked by Goudeau to investigate gambling at the Turf Lounge.
Sheriff Adler V. Ledoux, Sheriff of the Parish of St. Landry, testified that he knew Clifton Thibodeaux and had discussed what constituted illegal gambling with Thibodeaux, advising him that taking a cut for the house constituted illegal gambling.
Sylvia Taylor Vige, wife of James Al-don Vige, testified that she was employed at the Turf Lounge by Clifton Thibodeaux during December, 1975, for about two weeks and worked in the back room where she occasionally dealt blackjack. Mrs. Vige said that she did not provide any money for financing the blackjack game but there was usually around $100 at the table when she dealt. The proceeds of the game were split by Thibodeaux, Jones and John Moreau and sometimes they would give her money. She did not know why the money was divided, but only knew that these three men received it.
Ms. Vige’s testimony was the only direct evidence that the Turf Lounge was a gambling house in the sense that the play operated directly to the benefit of anyone not actually participating in the games. There would of course be indirect profit to defendants-appellants in the form of increased sales of liquor as the result of the gambling activity on the premises. It was within the province of the trier of fact to accept or reject Ms. Vige’s testimony and to judge her credibility. As the trial court pointed out, “. . . the direct testimony of Sylvia Taylor Vige, who banked and dealt a blackjack game . . . .” was that the profits of the game were split between Thibodeaux, Jones and Moreau. The trial court accepted Ms. Vige’s testimony and we see no reason to question his evaluation of this witness.
*36 Our review of the record indicates a more than ample basis for the trial court’s conclusion that the premises constituted a gambling house within the purview of LSA-R.S. 13:4721. Particularly impressive is the direct evidence, given by Ms. Vige and accepted by the trial court, that the proceeds of the blackjack game were split by Thibodeaux, Jones and Moreau. Other strong support for the trial court’s conclusion is found in the convictions of Thibodeaux and Moreau for gambling on the premises. While the trial court found several other less direct indicia of gambling, we do not find it necessary to comment on these.
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are assessed against defendants-appellants.
AFFIRMED.