CHARLES F. MARSLAND, JR., in his official capacity as Prosecuting Attorney, City and County of Honolulu, State of Hawaii, Plaintiff-Appellant, *v.* ALBERT PANG, THOMAS KEY, ESTRELIO PABLO, also known as James Ramos and "Iliong," ALFRED ABIHAI, ANDREW MARRAS, WILLIAM SILVA, also known as "Bolo," MOMI FLORENDO, MAE GALINATO, RAYMOND YAMASHITA, GERALDINE SANCHEZ, and HAROLD VIELA, Defendants-Appellees, and JOHN DOES 1-25, and JANE DOES 1-25, Defendants

NO. 9614

(CIVIL NO. 76056)

APRIL 16, 1985

BURNS, C.J., HEEN AND TANAKA, JJ.

464

466

OPINION OF THE COURT BY HEEN, J.

On February 15, 1983, the prosecutor filed a complaint[1] to enjoin eleven persons from engaging in various criminal activities at eight specified places in the City and County of Honolulu, and for other relief. The lower court dismissed the complaint and the

---

[1] The 18-page complaint violates the requirements in Rule 8(a), Hawaii Rules of Civil Procedure (HRCP) (1980), that it be "a short and plain statement[.]" The lower court should enforce the rule. Attached to the complaint are numerous affidavits which we have considered as part of the pleadings. Rule 10(c), HRCP.

prosecutor appealed.[2] We hold that the lower court erred in dismissing that count of the complaint relating to an alleged zoning code violation, but was correct in dismissing all other matters.

The complaint alleges that the defendants are intentionally, knowingly, recklessly, and/or negligently, directly or indirectly, maintaining, permitting, and/or aiding and abetting the following crimes and violations:

1. Promoting gambling in the first degree in violation of Hawaii Revised Statutes (HRS) § 712-1221 (1983).
2. Promoting gambling in the second degree in violation of HRS § 712-1222 (1976).
3. Gambling in violation of HRS § 712-1223 (1976).
4. Possession of gambling records in the first degree in violation of HRS § 712-1224 (1980).
5. Possession of gambling records in the second degree in violation of HRS § 712-1225 (1976).
6. Possession of gambling devices in violation of HRS § 712-1226 (1976).
7. Possession of prohibited gaffs in violation of § 13-2.2, Revised Ordinances of Honolulu (ROH) (1978).
8. Criminal conspiracy in violation of HRS § 705-520 (1976).
9. Cruelty to animals in violation of HRS § 711-1109 (1976).
10. Violation of the City's Comprehensive Zoning Code (CZC) § 21-4.11, ROH (1978).
11. Violation of the City's building code (building code) requirement § 18-3.1 ROH (Cum. Supp. 1982).
12. Violation of Public Health Regs., ch. 1-A, Food Service and Food Establishment Sanitation Code (Haw. 1975).

The complaint further alleges that:

20. The activities referred to occurring on the "Place," as

---

[2] An answering brief in this matter was filed on behalf of defendant-appellant Key on July 24, 1984. On August 10, 1984, Hayden Burgess, Esq., was allowed to withdraw as counsel for defendants-appellees Pang, Abihai, Marras, Silva, Florendo, Galinato, Yamashita, Sanchez, and Viela, subject to the supreme court's being informed by any defendant-appellee of opposition to such withdrawal within fourteen days of the order. No opposition appears in the record. On September 10, 1984, the supreme court allowed Anson O. Rego, Esq., to appear for defendants-appellees Pablo, Abihai, Marras, Silva, Florendo, Galinato, Yamashita, and Viela, and allowed those defendants-appellees to join in Key's answering brief. Pang and Sanchez did not file answering briefs and were not present or represented at oral argument.

alluded to herein, are contrary to the will and policies of the people of the State of Hawaii by being specifically contrary to the legislative mandates of Sections 712-1220 through and including 712-1226, 705-520, 711-1109, Chapter 321, H.R.S., and 13-2.2, R.O.H., and the Rules and Regulations of the Department of Health, State of Hawaii, and the Department of Building, City and County of Honolulu, State of Hawaii, and substantially affects a considerable number of persons, individually as well as jointly, in the State of Hawaii by being injurious to the public morals and social well-being and fibre of the people of the State of Hawaii.

The alleged activities are described in the complaint as "public, private and/or mixed nuisances" because of their continuing and permanent nature. *See* 58 Am. Jur. 2d *Nuisances* §§ 5 and 6 (1971).

The complaint alleges that the criminal activities are occurring at the following locations:[3]

1. A location called "Tanaka's," 87-879 Paakea Road, Waianae, Hawaii (T.M.K. No. 8-7-18-35).
2. A location called "Longbridge," 66-779 Haleiwa Road, Haleiwa, Hawaii, 96712.
3. A location called "Kunia Camp," Kaleponi Drive/Kunia Drive between House #436–437, Kunia, Hawaii, 96759.
4. 1035 Matzie Lane, Honolulu, Hawaii, 96817.
5. A location called "Landford," 85-1128-B Waianae Valley Road, Waianae, Hawaii, 96792.
6. 87-722 Meaulu Road, Waianae, Hawaii, 96792.
7. A location called "Whitmore Village," Uwalu Circle/Circle Makai, Wahiawa, Hawaii, 96786.
8. 41-1453 Kumuula Street/Moole Street, Waimanalo, Hawaii, 96795. Kahuku and to the rear of 41-1453 Kumuula Street (closest intersecting street — Moole Street), Waimanalo, Hawaii, 96795.

The complaint alleges that defendant Albert Pang (Pang) is the owner of Tanaka's. The other named defendants are alleged to be principals in the allegedly illegal activities and one is alleged to be a "lessee." There is no allegation as to the owners of the other locations.

---

[3] The complaint details only the activities at Tanaka's. For purposes of this opinion, we will consider that the same kinds of activities take place at the other sites.

Finally, the complaint alleges that "notwithstanding repeated and numerous arrests and/or convictions of people connected with the allegedly illegal activities, the sentences imposed have not deterred or stopped said activities."[4]

In addition to seeking an injunction against defendants, the

---

[4] At the time the complaint was filed, the maximum penalties for the various alleged offenses were as follows:

| OFFENSE | PENALTY |
|---|---|
| HRS § 712-1221 Promoting gambling 1° | Class C felony 5 years' imprisonment (§ 706-660(3)) or $5,000 fine (§ 706-640(2)) |
| HRS § 712-1222 Promoting gambling 2° | Misdemeanor — 1 year maximum imprisonment (§ 701-663) or $1,000 fine (§ 706-640(3)) |
| HRS § 712-1223 Gambling | Same as above |
| HRS § 712-1224 Possession of gambling records 1° | Class C felony 5 years' imprisonment (§ 706-660(3)) or $5,000 fine (§ 706-640(2)) |
| HRS § 712-1225 Possession of gambling records 2° | Misdemeanor — 1 year maximum imprisonment (§ 701-663) or $1,000 fine (§ 706-640(3)) |
| HRS § 712-1226 Possession of gambling device | Misdemeanor — 1 year maximum imprisonment (§ 701-663) or $1,000 fine (§ 706-640(3)) |
| HRS § 705-520 Criminal conspiracy | Conspiracy to commit class A felony is class B felony (§ 705-526) — 10 years' imprisonment (§ 706-660(2)) or $1,000 fine (§ 706-640(1)). Otherwise, conspiracy is offense of same class as object of conspiracy (§ 705-526) |
| HRS § 711-1109 Cruelty to animals | Misdemeanor — 1 year maximum imprisonment (§ 701-663) or $1,000 fine (§ 706-640(3)) |
| Violation of building code (§ 18-5.1 ROH — building permit required) | Misdemeanor — imprisonment of not more than 1 year and/or $1,000 fine (§ 18-7.1 ROH (Cum. Supp. 1982)) |
| § 13-2.2 ROH Possession of gaff | Fine of not more than $100 or imprisonment of not more than 3 months (§ 13-2.3 ROH) |
| § 21-4.11 ROH Use regulations (retailing food and soft drinks within AG-2 zoned district) | Fine not exceeding $1,000 or imprisonment of not more than 30 days or both (§ 21-1.6 ROH) |

complaint asks that Tanaka's "be permanently enjoined, re-strained, abated, and prevented as a place in or [sic] which to di-rectly or indirectly conduct or maintain or continue the nuisance(s) . . . complained of."[5]

Finally, the complaint asks that all illegal structures at Tanaka's be demolished, that all furniture, fixtures, and movable property at Tanaka's (except property owned by non-defendants) be sold, that the proceeds be applied in payment of costs and fees and, if the proceeds are insufficient, that the real estate at Tanaka's be sold.[6]

On April 27, 1983 the lower court entered an order dismissing the complaint except as to Pang's alleged zoning, building, and health code violations. The reason for the dismissal was that "the complaint fails to state a claim upon which relief can be granted[.]"

On September 29, 1983, the lower court ordered dismissal of the remainder of the complaint against Pang on the grounds that the allegations "are vague and overbroad and further, that there are adequate remedies at law which should be and have not been first exhausted."

---

| § 18-3.1 ROH Permits required | Misdemeanor - fine of not more than $1,000 or imprisonment for not more than one year (§ 18-7.1 ROH (Cum. Supp. 1982)) |
| Public Health Regulations, ch. 1-A, Food Service and Food Establishment Sanitation Code | $500 fine or not more than 1 year imprisonment or both (§ 321-18) |

[5] The general rule is that in the absence of explicit statutory authorization to the contrary, *see, e.g.,* Cal. Penal Code §§ 11225 - 11235 (West 1982 & Supp. 1984), an injunction can operate only against persons and not property. 42 Am. Jur. 2d *Injunctions* § 3 (1969).

[6] This prayer involves the questions (1) whether, if defendants lose this case, they may be ordered to pay costs and fees; and (2) whether defendants' property may be ordered to be sold and the proceeds applied to pay the costs and fees if defendants fail to do so. HRS § 712-1276 (Supp. 1984) provides that reasonable costs may be awarded by the court to the person bringing the abatement action under § 712-1271, and § 712-1277 implicitly makes such award a lien on the premises. However, as will be shown, *infra,* the remedies provided in HRS §§ 712-1270 to -1280 (Supp. 1984) are not applicable in this case.

I.

PROSECUTOR'S STANDING TO SUE

Although not raised here or in the court below, we note that the prosecutor is not authorized by law to bring this action for nuisance abatement under any of the statutes, ordinances or regulations cited by him. The prosecutor's powers and functions are limited to those expressly accorded to his office by the statute creating it. 63A Am. Jur. 2d *Prosecuting Attorneys* § 20 (1984). The office of the prosecuting attorney is established in Article VIII of the Revised Charter of the City and County of Honolulu of 1973 (1983) (Charter). Unless otherwise specifically provided by statute, his powers and functions are limited by § 8-105 of the Charter to the prosecution of criminal offenses against the laws of the State and the ordinances and rules and regulations of the city.[7] The person authorized to represent the City and County of Honolulu in all other legal matters is the Corporation Counsel. Charter § 5-203.

---

[7] Section 8-105 of the Revised Charter of the City and County of Honolulu provides:

Powers, Duties and Functions - The prosecuting attorney shall:

(a) Attend all courts in the city and conduct, on behalf of the people, all prosecutions therein for offenses against the laws of the State and the ordinances and rules and regulations of the city.

(b) Prosecute offenses against the laws of the State under the authority of the attorney general of the State.

(c) Appear in every criminal case where there is a change of venue from the courts in the city and prosecute the same in any jurisdiction to which the same is changed or removed. The expense of such proceeding shall be paid by the city.

(d) Institute proceedings before the district judges for the arrest of persons charged with or reasonably suspected of public offenses, when he has information that any such offenses have been committed, and for that purpose, take charge of criminal cases before the district judges either in person or by a deputy or by such other prosecuting officer or in such other manner as he shall designate with approval of the district court or in accordance with statue [sic]; draw all indictments and attend before and give advice to the grand jury whenever cases are presented to it for its consideration; and investigate all matters which may properly come before him. Nothing herein contained shall prevent the conduct of proceedings by private counsel before courts of record under the direction of the prosecuting attorney.

Moreover, the statutes and ordinances cited by the prosecutor authorize abatement either by a specific official in his official capacity or on behalf of the State of Hawaii or the City and County of Honolulu.[8] The prosecutor is not so authorized and the action should have been instituted in the name of the authorized official or the State or City and County as the real party in interest. Rule 17(a), Hawaii Rules of Civil Procedure (HRCP) (1980).[9]

Under Rule 17(a) failure to name the real party in interest in the complaint is not grounds for dismissal, but leave must be granted to allow ratification by or joinder or substitution of the real party in interest. Consequently, on remand the court must grant such leave. We anticipate a likelihood of such ratification, substitution, or joinder. Therefore, the issues of procedural and substantive law raised in this appeal remain in contention, and we address them now in order to settle the law for the court and prospective parties.

## II.

## WHICH RULES GOVERN

The first question is whether the lower court based its orders on

---

[8] Although HRS § 712-1271 (Supp. 1984), cited by the prosecutor, does authorize him to bring suit to abate such nuisances as described in HRS § 712-1270, the authority does not apply to the activities alleged in this case, as will be discussed, *infra*, in section VI A. See section VI B for a discussion of HRS § 603-23, also relied on by the prosecutor.

[9] Rule 17(a) reads as follows:

Real Party in Interest. Every action shall be prosecuted in the name of the real party in interest. An executor, administrator, guardian, bailee, trustee of an express trust, a party with whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his own name without joining with him the party for whose benefit the action is brought. No action shall be dismissed on the ground that it is not prosecuted in the name of the real party in interest until a reasonable time has been allowed after objection for ratification of commencement of the action by, or joinder or substitution of, the real party in interest; and such ratification, joinder, or substitution shall have the same effect as if the action had been commenced in the name of the real party in interest.

Rules 12(b)(6),[10] 12(c),[11] or 56(c), HRCP.[12] We conclude that the April 27, 1983 order was based on Rule 12(b)(6), HRCP, and the September 29, 1983 order was based on Rule 12(c), HRCP.

In appraising the sufficiency of the complaint under Rule 12(b)(6), the accepted rule is that well-pleaded allegations of fact are taken as admitted and the complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief. *Midkiff v. Castle and Cooke, Inc.*, 45 Haw. 409, 414, 368 P.2d 887, 890-91 (1962). "The motion to dismiss for failure to state a claim is viewed with disfavor and is rarely granted." *Giuliani v. Chuck*, 1 Haw. App. 379, 385, 620 P.2d 733, 737 (1980). 5 Wright and Miller, Federal Practice and Procedure: *Civil* § 1357 (1969).

However, in weighing the allegations of the complaint as against a motion to dismiss, the court is not required to accept conclusory allegations on the legal effect of the events alleged. 5 Wright and Miller, *supra,* § 1357.

A Rule 12(c) motion serves much the same purpose as a Rule 12(b)(6) motion, except that it is made after the pleadings are closed.

---

[10] Rule 12(b)(6), HRCP, provides:

How presented. Every defense, in law or fact, to a claim for relief in any pleading, whether a claim, counterclaim, cross-claim, or third-party claim, shall be asserted in the responsive pleading thereto if one is required, except that the following defenses may at the option of the pleader be made by motion: . . . (6) failure to state a claim upon which relief can be granted[.]

[11] Rule 12(c), HRCP, provides:

Motion for Judgment on the Pleadings. After the pleadings are closed but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56, and all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule 56.

[12] Rule 56(c), HRCP, provides in pertinent part:

Motion and Proceedings Thereon. The [summary] judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

> A Rule 12(c) motion is designed to provide a means of disposing of cases when the material facts are not in dispute and a judgment on the merits can be achieved by focusing on the content of the pleadings and any facts of which the court will take judicial notice. The motion for a judgment on the pleadings only has utility when all material allegations of fact are admitted in the pleadings and only questions of law remain.

5 Wright and Miller, *supra*, § 1357.

In the instant case, then, we must appraise the allegations of the complaint to determine whether, under the law of nuisance abatement, it states a claim upon which relief can be granted. The answer to that question depends on whether the complaint satisfies Rule 8(a)(1), HRCP. 5 Wright & Miller, *supra*, § 1203.[13] To satisfy Rule 8(a)(1), HRCP, "the complaint must contain either direct allegations on every material point necessary to sustain a recovery on any legal theory, even though it may not be the theory suggested or intended by the pleader, or contain allegations from which an inference fairly may be drawn that evidence on these material points will be introduced at trial." 5 Wright & Miller, *supra*, § 1216, at 121-23 (footnotes omitted). Thus, we examine the law of nuisance abatement generally and in this jurisdiction to determine what are the material elements of the prosecutor's claims for relief and what must be alleged in the complaint.

## III.

### NUISANCE ABATEMENT GENERALLY

At common law courts of equity were without authority or jurisdiction to enjoin criminal acts solely on the basis of their criminality. 5 Moore's Federal Practice ¶ 38.24[3] (2d ed. 1984); IV J. Pomeroy, *A Treatise on Equity Jurisprudence*, § 1347 (5th ed. 1941); T. Spelling and J. Lewis, *A Treatise on the Law Governing Injunctions*,

---

[13] It should be noted that Rule 8(a)(1), HRCP, and Rule 8(a)(2), Federal Rules of Civil Procedure (FRCP) have the same wording. The discussion in Wright and Miller relates to Rule 8(a)(2), FRCP. Rule 8(a)(1), FRCP, prescribes the jurisdictional statement.

§ 10 (1926) (hereinafter Spelling and Lewis); Annot., 40 A.L.R. 1145 (1926); 42 Am. Jur. 2d *Injunctions* § 157 (1969); 58 Am. Jur. 2d *Nuisances* § 143 (1971). Equity courts, even now, will not exercise their powers for the purpose of enforcing the criminal laws by restraining criminal acts. Annot., 40 A.L.R., *supra.* However, the common law has always provided a remedy for a nuisance, either by way of an action for damages or an equitable action to restrain the continuance of the wrong, or both, 58 Am. Jur. 2d, *supra*, §§ 98, 143, and where equity would otherwise have jurisdiction to enjoin certain conduct, the fact that the legislature has made such conduct a crime does not affect that jurisdiction. 42 Am. Jur. 2d, *supra*, §§ 157, 160.

The historical basis of equity jurisdiction to grant injunctions is the protection of property rights. Spelling and Lewis, *supra*, § 7. Since the inception of that principle, however, equity jurisdiction has expanded to allow issuance of an injunction where there are other appropriate circumstances besides injury to a specific property right. *See Kleinjans v. Lombardi*, 52 Haw. 427, 430, 478 P.2d 320, 323 (1970). In such situations equity acts, as it does in relation to nuisances, not to enforce the criminal law, but to protect from irreparable harm. *See id.* Such appropriate circumstances were found in *In re Debs*, 158 U.S. 564, 15 S. Ct. 900, 29 L.Ed. 1092 (1895), where respondent's railroad strike activities interfered with interstate commerce and obstructed the mail. The supreme court issued an injunction against those activities although not saying they amounted to a nuisance. The Hawaii Supreme Court has also held that "[i]f the actual or threatened tortious acts complained of interfere with property or *rights of a pecuniary nature,* equity will intervene[,]" even though the tortious acts also constitute criminal offenses. *Auto Rental Co. v. Lee*, 35 Haw. 77, 93 (1939) (emphasis added). In *Auto Rental,* the supreme court upheld an injunction against violation of this jurisdiction's Fair Trade Act[14] without stating that the violation was a nuisance. Appropriate circumstances to justify injunctions also exist in the field of professional or occupational licensing statutes. It is said that the statutory requirements are legislative expressions of the public policy of the state and the

---

[14] The Fair Trade Act, §§ 205-20 to -26, Revised Laws of Hawaii 1955 (Act 212, § 1, 1937 Haw. Sess. Laws 255-57), cited to by the court in *Auto Rental* was repealed in 1967. Act 49, § 1, 1967 Haw. Sess. Laws 37.

operation of such a profession or occupation without such a license is *per se* irreparable injury to that expressed public policy. *State v. Andrews*, 65 Haw. 289, 651 P.2d 473 (1982); *see* 42 Am. Jur. 2d *Injunctions* § 163. *See also In re Debs, supra.*

Absent the appropriate circumstances as described above, equity courts nonetheless have authority to enjoin acts constituting a nuisance. *See In re Debs, supra; Kleinjans v. Lombardi, supra; Auto Rental Co. v. Lee, supra.* The accepted definition of nuisance and public nuisance is set forth in *Littleton v. State of Hawaii,* 66 Haw. 55, 656 P.2d 1336 (1982), as follows:

> A nuisance has been variously defined to mean "that which unlawfully annoys or does damage to another, anything that works hurt, inconvenience, or damage, anything which annoys or disturbs one in the free use, possession, or enjoyment of his property or which renders its ordinary use or physical occupation uncomfortable, and anything wrongfully done or permitted which injures or annoys another in the enjoyment of his legal rights." 58 Am.Jur.2d *Nuisances* § 1 at 555 (1971). As to what constitutes a public nuisance within the meaning of HRS § 46-12, we consider the following statement of the Kansas court to be generally applicable:

> > A nuisance, to be a public nuisance, must be in a public place, or where the public frequently congregate, or where members of the public are likely to come within the range of its influence; for, if the act or use of property be in a remote and unfrequented locality, it will not, unless malum in se, be a public nuisance. (citation omitted) . . . If the nuisance affects a place where the public has a legal right to go, and where the members thereof frequently congregate, or where they are likely to come within its influence, it is a public nuisance. [*City of Burlington v. Stockwell,* 5 Kan.App. 569, 573, 574, 47 P. 988, 989-90 (1897).]

*Littleton, supra,* at 67, 656 P.2d at 1345.

However,

> The suppression of nuisances injurious to the public health or morality is among the most important duties of government. The state, in the exercise of its police power, has authority to abate nuisances, and under this power, and subject to constitutional limitations, the legislature has authority to declare what

shall be deemed nuisances and to provide for their suppression. *Since "nuisance" is a term which does not have a fixed content, either at common law or at the present time, compelling reasons of policy require that the responsibility for establishing those standards of public morality, the violation of which is to constitute nuisances within equity jurisdiction, be left to the legislature.*

58 Am. Jur. 2d, *supra*, § 14 (footnotes omitted) (emphasis added).

The authority of the legislature adverted to above was deferred to by the California supreme court in *People v. Lim*, 18 Cal. 2d 872, 118 P.2d 472 (1941), where it was said:

In [the field of nuisances] where the meaning of terms is so vague and uncertain it is a proper function of the legislature to define those breaches of public policy which are to be considered public nuisances within the control of equity.

*Id.* at 880, 118 P.2d at 476. The California court also stated that it is not the province of the courts of equity to ordain for themselves the power to abate criminal acts by declaring their mere repetition or continuance a public nuisance where the legislature has not seen fit to do so and where the acts do not in fact constitute a public nuisance. *Id.*

We agree with the California supreme court that absent a statute or valid ordinance declaring activities in violation of general concepts of public policy to be a nuisance or subject to abatement, equity courts generally are without jurisdiction to enjoin such activities unless they in fact constitute a nuisance. *Id.* at 877, 118 P.2d at 475; *see also Kreling v. Superior Court of Los Angeles County*, 18 Cal. 2d 884, 118 P.2d 470 (1941); *Schur v. Troeger*, 47 Cal. 2d 11, 300 P.2d 831 (1956).

We turn now to the specific law of public nuisance abatement in this jurisdiction to determine whether our equity courts are empowered to issue an injunction under the allegations of the prosecutor's complaint.

IV.

NUISANCE ABATEMENT IN THIS JURISDICTION

This jurisdiction has had from very early times until now numerous statutes providing for abatement of particular activities

amounting to nuisances.[15] Nevertheless, the supreme court, in *Akwai v. Royal Ins. Co.,* 14 Haw. 533 (1902), held that under the statute authorizing the territorial board of health to abate nuisances, the board was not authorized to destroy that which was not a nuisance or make or declare that to be a nuisance which was not in fact a nuisance. It follows from *Akwai* that, to warrant an injunction where the nuisance is also a crime, there must be proof of what the law denominates a nuisance as distinguished from a mere crime. *See also City and County v. Cavness,* 45 Haw. 232, 364 P.2d 646 (1961); Annot., 40 A.L.R., *supra.*

In the area of criminal law of this jurisdiction, "Keeping a Common Gambling House" was declared to be a "Common Nuisance" and a criminal offense from the time of the Penal Code in 1869, ch. XXXVI, § 1, until repealed in 1972 by the new penal

---

[15] Those statutes generally deal with matters of health, safety, environmental quality, licensing, and marketing of food products. The earliest statutes empowered the Territorial Board of Health to make regulations respecting nuisances and sources of filth and causes of sickness and their abatement. Civil Code 1859, §§ 281 to 290. The following is merely a listing of those statutes. Some have been repealed completely or amended. We do not here trace the history of any of the statutes. Civil Code of the Hawaiian Islands §§ 281 to -306 (1859) (health); Penal Code of the Hawaiian Kingdom §§ 9 to -28 (1869) (adopted provisions of the Civil Code); Compiled Laws of the Hawaiian Kingdom §§ 285 to -306 (1884) (health); Ch. XXII, Compiled Laws of the Hawaiian Kingdom (1884) (Act of 1882 relating to building materials required in construction of buildings in City of Honolulu); Revised Laws of Hawaii (RLH) 1905 §§ 994 to -1003 (health); RLH 1915 ch. 66, §§ 930 to -937 (health); RLH 1925 ch. 69, §§ 923 to -931; RLH 1935 §§ 1310 to -1339 (health); RLH 1945 § 1156 (birds), §§ 2701 to -2730 (health), -8531 and -8532; RLH 1955 §§ 22-1 to -9 (health) (amended 1963 and 1965); §§ 22-20 to -25 (health) (amended 1960, 1963 and 1965); §§ 23-11 to -14 (health) (amended 1960); § 74-13 (Hawaii Housing Authority); § 359-8 (civil defense emergency); § 47-71 (Supp. 1957) (amended 1960) (air pollution); §§ 22-26.1 to -.8 (Supp. 1960) (amended 1963 and 1965) (flower exports); § 98C-4 (Supp. 1960) (strip mining); § 22-2(b) (Supp. 1963) (health); § 22-26.8(b) (Supp. 1963) (flower export); Hawaii Revised Statutes (HRS) § 128-8 (1968) (civil defense emergency); HRS § 145-11 (1968) (produce dealers); HRS § 147-2 (1968) (fruits and vegetables); HRS § 147-25 (1968) (produce export); HRS § 147-37 (1968) (flower export); HRS § 148-3 (1968) (fruits and vegetables); HRS § 181-3 (1968) (strip mining); HRS ch. 322 (health) (amended 1975); HRS § 457-26 (1968) (practicing nursing without license); HRS § 128-8 (1976); HRS § 145-11 (1976) (produce dealers); HRS § 147-2 (1976) (fruits and vegetables); HRS § 148-3 (1976) (fruits and vegetables); HRS ch. 322; HRS § 264-76 (outdoor advertising); HRS § 328-27 (1976) (food and drugs); HRS § 342-22 (1976) (air pollution); HRS § 342-32 (1976) (water pollution); HRS § 342-42 (1976) (amended 1984) (noise pollution); HRS § 147-25 (Supp. 1984) (fruits and vegetables); HRS § 147-37 (Supp. 1984) (flowers); HRS § 264-101 (Supp. 1984) (vending from highway).

code.[16] Act 9, § 1, 1972 Haw. Sess. Laws 32, 140. Until repealed the prior law specifically authorized prosecution of the criminal offense and abatement of the common nuisance under HRS § 727-14 (1968). Since repeal of the common nuisance statutes, this jurisdiction has been without a general statutory authority for abatement of such nuisances as described therein. Nonetheless, we hold that the circuit courts in equity may enjoin such activities upon a showing that they in fact do constitute a nuisance. *See Akwai v. Royal Ins. Co., supra; see also People v. Lim, supra.*

---

[16] At the time of repeal the provisions regarding the offense, penalty and remedy were contained in HRS ch. 727 (1968), which read in pertinent part as follows:

§ 727-1 Defined. The offense of common nuisance is the endangering of the public personal safety or health, or doing, causing or promoting, maintaining or continuing what is offensive, or annoying and vexatious, or plainly hurtful to the public; or is a public outrage against common decency or common morality; or tends plainly and directly to the corruption of the morals, honesty, and good habits of the people; the same being without authority or justification by law:

As, for example: carrying on a trade, manufacture, or business in places so situated that others indiscriminately, who reside in the vicinity, or pass in a highway or public place, or resort to a schoolhouse, meetinghouse, or any other place of legal and usual resort or assembly, are liable to be thereby injured, annoyed, disturbed, or endangered by deleterious exhalations, noisome vapors, hideous, alarming, or disgusting sights, intolerable noise, or otherwise;

Spreading or endangering the spreading of smallpox, or other infectious disease; carrying an infected person, or causing him to pass through a frequented street, opening a hospital or pesthouse as to endanger neighbors or the passersby in a frequented street, or otherwise;

Making or storing gunpowder in or near a populous or public or frequented place, without authority therefor, or otherwise making or storing the same contrary to law;

Blasting with excessive charge of giant powder or other explosives;

Making loud and troublesome noises by night;

Keeping animals that disturb the neighborhood by night;

Permitting ferocious or dangerous animals to go abroad;

Keeping a bawdy house;

Open lewdness or lascivious behavior, or indecent exposure;

Keeping a common gambling house;

Keeping a disorderly house to the public disturbance and annoyance;

Selling, dealing in, having in possession, or using sneezing powder or any similar substance other than snuff.

§ 727-2 Trivial annoyance. Occasioning a groundless fear or merely a trivial annoyance or inconvenience is not a common nuisance. Whether the act or thing is really so hurtful or prejudicial to others as to render it a common nuisance, is a question of fact to be determined by the jury, court, or magistrate called to pass upon the same.

Therefore, the question is whether the abatement sought in this case is specifically authorized by statute or ordinance[17] or whether the alleged activities are such as to constitute a public nuisance.

## V.

### ALLEGATIONS IN THE MATTERS DISMISSED UNDER RULE 12(c)

Addressing first the dismissal of the alleged CZC, building code, and health regulation violations under Rule 12(c), we hold that the lower court erred in dismissing the CZC allegations but was correct in dismissing the building code and health regulation allegations.

---

§ 727-3  Annoyance to few persons. Where only a few persons, of many who are equally exposed, are, owing to their peculiarity of temperament, or to infirmity, annoyed by an act or thing, the same is not a nuisance:

As where the noise of a tinman's shop annoys but a few of many persons equally within hearing.

§ 727-10  Penalty. Whoever is guilty of the offense of common nuisance shall be fined not more than $500 or imprisoned not more than six months; except as otherwise provided by law.

§ 727-14  Suit to abate. Whenever there is reason to believe that such nuisance is kept, maintained, or exists in any county, the attorney general, or the county attorney or prosecuting attorney of the county, in the name of the State, may maintain a suit to abate and prevent such nuisance and to perpetually enjoin the person or persons conducting or maintaining the same, and the owner, lessee, or agent of the building, or place, in or upon which the nuisance exists, from directly or indirectly maintaining or permitting the nuisance.

§ 727-15  Temporary writ. The petition in such suit need not be verified but shall be signed by the officer bringing the same and shall include a certification by him that he believes the allegations of the petition to be true. Whenever the existence of the nuisance is shown in such suit to the satisfaction of the court or judge thereof, by the allegations of the petition or by affidavit or both, the court or judge may allow a temporary writ of injunction to abate and prevent the continuance or recurrence of the nuisance.

§ 727-18  Order of abatement. If the existence of a nuisance is established in a suit as provided herein, an order of abatement shall be entered as a part of the judgment in the case, and the court, if in its judgment the circumstances justify such action, may also direct the effectual closing of the building or place against its use for any purpose, and so keeping it closed for a period of not exceeding one year, unless sooner released, as provided by section 727-19. While the order remains in effect as to closing, the building or place shall be and remain in the custody of the court.

[17] Under HRS § 70-67 (1976), the city council is authorized to enact and enforce ordinances necessary to prevent or summarily remove nuisances.

## A.

## THE ZONING VIOLATION

Tanaka's is alleged to be zoned for agricultural use under the CZC. The allegation that food is sold at retail on the premises is a sufficient allegation of a CZC violation. Since in a motion or ruling based on Rule 12(c), HRCP, facts well pleaded are admitted, the violation may be enjoined under § 21-1.6(d), Revised Ordinances of Honolulu (ROH) (Cum. Supp. 1982).[18] Consequently, that claim was improperly dismissed.

However, § 21-1.6(d) authorizes the "City" to maintain an action for injunction. As we have noted above, the prosecutor is neither authorized to bring the action nor to represent the City.

## B.

## BUILDING CODE VIOLATION

The lower court properly dismissed the request for an injunction against the alleged building code violation. The complaint, including the supporting affidavits, fails to allege the necessary facts for abatement of those violations.

The allegations regarding building code violations are that the buildings were either constructed or moved without a building permit as required by § 18-3.1, ROH (Cum. Supp. 1982). However, ROH does not provide that a building constructed or moved without a permit is a nuisance or is subject to removal or demolition. Rather, a criminal penalty is provided in § 18-7.1 ROH (Cum. Supp. 1982). In addition, on the basis of the violation of the building code requirement, the City may refuse to issue a Certificate of Occupancy under the Uniform Building Code (UBC) § 307 (1982).[19]

---

[18] Section 21-1.6(d), ROH, reads as follows:

The City may maintain an action for an injunction to restrain any violation of the provisions of this chapter and may take any other lawful action to prevent or remedy any violation.

[19] The Uniform Building Code is incorporated by reference into the City's building code. Section 16-1.1 ROH.

On the other hand, § 16-1.1(4) ROH (Cum. Supp. 1982) provides that "unsafe buildings" may be abated by repair, rehabilitation, demolition, or removal. Unsafe buildings are declared to be public nuisances and are described as

> structurally unsafe or not provided with adequate egress, or which constitute a fire hazard, or are otherwise dangerous to human life, or which in relation to existing use constitute a hazard to safety or health, or public welfare, by reason of inadequate maintenance, dilapidation, obsolescence, fire hazard, or abandonment[.]

*Id.*

It may be argued that the serving of food in the buildings on the premises without food permits makes those buildings unsafe as hazards to health. However, § 16-1.1(4) requires that the Building Official make such a finding, give notice thereof and an order to abate to the owner, and post a notice to that effect on the property. The owner's failure to abate the nuisance allows prosecution or legal or equitable proceedings to achieve compliance. *Id.* The complaint is deficient in that it fails to allege that such a finding was made or that the buildings were posted with the requisite notice. *See City and County v. Cavness, supra.* Moreover, it is the "Building Official" who is authorized to bring the action "on behalf of the City," not the prosecutor. Section 16-1.1(4)(e), ROH.

## C.

### SANITATION CODE VIOLATION

The complaint alleges violation of Public Health Regulations, chapter 1A, Food Service and Food Establishment Sanitation Code (promulgated by the Department of Health pursuant to HRS ch. 321), since food was being served without a permit. However, neither chapter 321 nor the health regulations provide for abatement in such a situation. The penalty provided in HRS § 321-18 and § 6 of the regulations is criminal in nature.

The department of health may abate nuisances under HRS ch. 322 (1976 and Supp. 1984). The department is authorized to examine all nuisances and cause them to be abated, destroyed, removed

or prevented. HRS § 322-1.[20] HRS § 322-2 requires notice to the owner to abate the nuisance. Upon noncompliance by the owner, the department may ask the district court to authorize the department to carry out the order.[21]

The complaint is deficient in that it does not allege that the requisite finding was made or notice given. Moreover, it is the director of health who is authorized to bring any action for abatement.

## VI.

## ALLEGATIONS IN THE MATTERS DISMISSED UNDER RULE 12(b)(6)

### A.

### APPLICABILITY OF HRS §§ 712-1270 TO -1280

We hold that the lower court was correct in holding that the violations of HRS §§ 712-1220 to -1226 could not be enjoined under HRS §§ 712-1270 to -1280 (Supp. 1984).[22] Section 712-1270 reads as follows:

Places of prostitution, displaying indecent matter, etc., a nuisance. Every place used for the purpose of violating those laws pertaining to offenses against public health and morals contained in parts I and II of this chapter, and every place in or upon which such violations are held or occur, including but not limited to all forms of prostitution, displaying indecent matter,

---

[20] Under HRS § 322-8 (Supp. 1984) the director of health may also impose a civil monetary penalty for violation of the health nuisance statutes or rules. The director may also order the person committing the violation to correct it.

[21] Section 322-9 was added in 1983 (Act 100, § 1, 1983 Haw. Sess. Laws 171-72), authorizing the director to seek injunctive relief from any court of competent jurisdiction. We do not consider this authorization as precluding the procedural requirements of HRS § 322-2.

[22] The briefs do not address the question whether the other alleged violations, HRS § 705-520 (Criminal Conspiracy), § 711-1109 (Cruelty to Animals), and § 13-2.2 ROH (Possession of Gaffs), are subject to injunction. However, they come within the discussion of HRS § 603-23, *infra.*

promoting pornography, and promoting pornography for minors, is a nuisance which shall be enjoined, abated, and prevented, whether it is a public or private nuisance.

Although gambling and drug offenses, along with prostitution and obscenity, are classified in the penal code, HRS ch. 712 (1976 and Supp. 1984), as offenses against public health and morals, places where gambling and drug offenses may occur are not declared to be nuisances in § 712-1270. The implication is that the latter offenses were not intended by the legislature to be covered by that nuisance abatement statute.

The implication is even clearer considering, as noted above, that the criminal offense of "Common Nuisance" was repealed in 1972. The repeal eliminated the broad sweep of the common nuisance statute and established in the penal code the specificity of offense definition required by modern criminal jurisprudence. *See* Commentary on HRS § 701-102 (1976); *see also* HRS § 701-103 (1976); Restatement (Second) of Torts § 821B comment c (1979). Of significance to this opinion is the fact, as noted previously, that the power of the court to order abatement of such nuisances (formerly HRS § 727-14 (1968)) was also repealed.

The legislative history of HRS § 712-1270 indicates clearly that the legislature was aware that the statute would not apply to gambling and drug offenses. Sen. Stand. Comm. Rep. No. 892, in 1979 Senate Journal, at 1405-06. We must also assume that the legislature was aware of the state of the law of nuisance abatement at that time.

Therefore, the question is whether the gambling and other criminal offenses are subject to abatement under § 603-23.

### B.

### ABATEMENT OF GAMBLING UNDER HRS § 603-23 (1976)[23]

At the outset it should be noted that § 603-23 is a specific grant of power to the circuit courts. It does not confer authorization

---

[23] HRS § 603-23 reads as follows:

Injunction of violation of laws and ordinances. The circuit courts shall have power to enjoin or prohibit any violation of the laws of the State, or of the ordinances of the various counties, upon application of the attorney general, the

upon any of the public officers therein enumerated to seek an injunction. That authority must be found elsewhere.[24] The question, here, is whether HRS § 603-23 allows the court to enjoin a public nuisance upon proper allegation in a suit that the prosecutor is authorized to bring. We hold that it does. However, in the instant case, the court correctly dismissed the counts it did under Rule 12(b), HRCP, for failure to state a claim.

A literal reading of § 603-23 leads one to conclude that the circuit courts may enjoin any criminal activity regardless of the kind and extent of injury inflicted or threatened. Such, however, would be in derogation of the common law adopted in this jurisdiction by HRS § 1-1 (1976).[25] Courts should not find that the common law has been superseded in the area mentioned by a statute where it does not appear that such was the legislative purpose. *State v. Taylor*, 49 Haw. 624, 628-29, 425 P.2d 1014, 1018 (1967). Absent such apparent legislative purpose, the common law will be followed. *Burns International Service, Inc. v. Department of Transportation*, 66 Haw. 607, 611, 671 P.2d 446, 449 (1983). Moreover, in all cases of statutory construction the rule in this jurisdiction is that the primary duty of the court is to ascertain and implement the legislative intent of the statute, and the courts are not limited to the words of the statute. *Kaiama v. Aguilar*, 67 Haw. ___, 696 P.2d 839 (1985). We find that superseding the common law in the area of nuisance abatement was not the legislative purpose of HRS § 603-23 and the statute is merely declaratory of the common law.

Section 603-23 is in virtually the same form now as when it was

---

director of the office of consumer protection, or the various county attorneys, corporation counsels, or prosecuting attorneys, even if a criminal penalty is provided for violation of the laws or ordinances. Nothing herein limits the powers elsewhere conferred on circuit courts.

[24] *See* section I of this opinion.

[25] HRS § 1-1 provides:

Common law of the State; exceptions. The common law of England, as ascertained by English and American decisions, is declared to be the common law of the State of Hawaii in all cases, except as otherwise expressly provided by the Constitution or laws of the United States, or by the laws of the State, or fixed by Hawaiian judicial precedent, or established by Hawaiian usage; provided, that no person shall be subject to criminal proceedings except as provided by the written laws of the United States or of the State.

first enacted in 1957. Act 287, § 1, 1957 Haw. Sess. Laws 321.[26] In recommending enactment of the statute, the Committee on Judiciary of the Territorial Senate stated:

> The purpose of this Bill is to add a new subsection to Section 215-18 dealing with the powers of the circuit court judges at chambers. The new subsection gives the circuit court judges the power to enjoin or prohibit any violation of Territorial laws or county ordinances, even if a criminal penalty is provided for violation of said laws or ordinances.
>
> At the present time, the question of the circuit court's power to grant injunctions to enjoin the violations has been raised where there are criminal penalties provided for in the law or ordinance sought to be enforced. The proposed statute would resolve this question and clearly grant this power to the circuit court judges at chamber. [sic]

Sen. Stand. Comm. Rep. No. 408, in 1957 Senate Journal, at 562.

We read the statute as a declaration by the legislature that, where there is a jurisdictional basis for equity to act to protect the private or public rights of our citizens from irreparable harm, the mere fact that the act complained of may also be subject to criminal penalties will not oust equity's jurisdiction. *In the absence of express legislative intent to forsake the common law rule regarding the limited jurisdiction of equity to interfere with enforcement of criminal laws, we will not do so. See Burns, supra.* Certainly the legislature could not in enacting § 603-23 have intended to deprive an individual of the panoply of rights accorded an accused in a criminal case, even where there was no factual basis for equity's intervention. We do not believe that the legislature intended to put equity courts in the business of enforcing criminal laws or to undermine the right of the accused to a jury trial and proof beyond a reasonable doubt.

The prosecutor argues that maintaining a gambling house was a nuisance *per se* indictable at common law[27] and abatable in equity.

---

[26] In 1972 the section was renumbered (Act 88, § 3(n), 1972 Haw. Sess. Laws 330) and in 1975 (Act 134, § 1, 1975 Haw. Sess. Laws 262) the director of the office of consumer protection was added as one upon whose application the circuit courts are empowered to act.

[27] In this jurisdiction there are no common law offenses. HRS §§ 1-1, 701-102; *State v. Ching*, 62 Haw. 656, 659, 619 P.2d 93, 94 (1980); *Territory v. Rogers*, 37 Haw. 566, 567 (1947).

38 Am. Jur. 2d *Gambling* § 118 (1968). *See* Spelling and Lewis, *supra*, § 10. Research indicates, however, that in the majority of states in which gambling houses have been abated as nuisances, the action has been based upon specific statutes providing for such abatement.[28] *See People v. Lim, supra.* As stated above, until 1972 keeping a gambling house was a criminal offense specifically declared to be a public nuisance per se and subject to abatement. The legislature not only repealed the statutory offense, but also the basis for abatement as a public nuisance per se. *Consequently, the keeping of a gambling house, which we will assume is the case here, can only be abated on the complaint of the properly authorized public official if it in fact is a public nuisance. See Akwai v. Royal Ins. Co., supra; People v. Lim, supra.*

A further aspect of a public nuisance is that one may be created where an act or series of acts constitute an obstruction of public rights, or affect the rights enjoyed by citizens as part of the public. *See* 58 Am. Jur. 2d, *supra*, § 8; *see also Littleton v. State, supra. There must be some interference with a public right.* A public right is one common to all members of the general public, and is collective in nature.[29] Restatement (Second) of Torts § 821B comment g (1979). Additionally, in determining whether acts or conduct constitute a public nuisance, the location and surroundings are important and are to be considered with the other circumstances of the case. What is a public nuisance in one locality may not be so in another. 58 Am. Jur. 2d, *supra*, § 36. *See Littleton v. State, supra.*

---

[28] *Wilkinson v. State ex rel. Morgan*, 396 So.2d 86 (Ala. 1981), *distinguished on other grounds*, 402 So.2d 922 (Ala. 1981); *State ex rel. Chwirka v. Audino*, 260 N.W.2d 279 (Iowa 1977), *distinguished on other grounds*, 333 N.W.2d 457 (Iowa 1983); *People v. Wheatridge Poker Club*, 194 Colo. 15, 569 P.2d 324 (1977); *Parish of St. Landry ex rel. Goudeau v. Turf Lounge, Ltd.*, 331 So.2d 32 (La. App. 1976); *City of Cudahy v. DeLuca*, 49 Wis.2d 90, 181 N.W.2d 374 (1970); *Walker v. State ex rel. Baxley*, 285 Ala. 315, 231 So.2d 882 (1970), *distinguished on other grounds*, 379 So.2d 1238 (Ala. 1980); *State ex rel. Buckson v. Sposato*, 43 Del. Ch. 443, 235 A.2d 841 (1967); *Carson v. State*, 221 Ga. 299, 144 S.E.2d 384 (1965); *State v. Amato*, 42 Del. Ch. 387, 213 A.2d 53 (1965); *State ex rel. Beil v. Dota*, 168 Ohio St. 315, 154 N.E.2d 634 (1958), *cert. denied*, 360 U.S. 912, 79 S. Ct. 1298, 3 L.Ed.2d 1261 (1959); *Boynton v. State*, 75 So.2d 211 (Fla. 1954), *distinguished on other grounds*, 168 So.2d 320 (Fla. 1964).

[29] The prior law is illustrative. Under HRS §§ 727-2 and -3 (1968) trivial annoyance or annoyance to a few people was not a nuisance.

## VII.

## ALLEGATIONS OF COMPLAINT

We hold that in an action to abate activities allegedly constituting a public nuisance, the statutorily authorized public official is required to allege and prove facts constituting a public nuisance independent of the criminal nature of the activity being conducted. Thus, he or she must allege and prove that where conducted the activities constitute a public nuisance in fact. 58 Am. Jur. 2d, *supra,* §§ 8, 10.

As stated above, the complaint is prolix and imprecise. It does clearly allege ongoing activities of a criminal nature. It also clearly alleges numerous arrests of the individuals named therein with resulting convictions and sentences which apparently have not curbed the activities of those individuals and others at the property in question. However, its thrust is against those activities as criminal activities and nuisances per se, not as public nuisances in fact.

The complaint alleges that the activities complained of constitute a public, private or mixed nuisance, affecting a considerable number of persons, individually and jointly, by being "injurious to the public morals and social well-being and fibre of the people of the State of Hawaii." We perceive those allegations to really be conclusions as to the results of the alleged criminal activities. *See* 5 Wright and Miller, *supra,* § 1218. The law requires allegations sufficient to show a public nuisance in fact. 58 Am. Jur. 2d, *supra,* § 172. *People v. Lim, supra.*

We think the complaint in *People v. Lim, supra,* is illustrative of the basic pleading requirement in a public nuisance case. The action was one to enjoin a gambling house as a public nuisance and preceded the enactment of the California statute authorizing such actions. The complaint sought to use the aegis of the general California statute regarding nuisance abatement. The lower court sustained a demurrer to the complaint. Defendants argued on appeal that the allegations of the complaint merely presented conclusions framed in the language of the statute. The California supreme court held that while defendants were correct in their contention that particular allegations of fact were required, the allegations of the complaint,

that the gambling house operated by defendants "draws together great numbers of disorderly persons, disturbs the public peace, brings together idle persons and cultivates dissolute habits among them, creates traffic and fire hazards, and is thereby injurious to health, indecent and offensive to the senses and impairs the free enjoyment of life and property[,]"

were adequate as against a general demurrer.

In the instant case, the affidavits attached to the complaint indicate that on two different occasions 300-400 people were observed on the premises. On other occasions, approximately 75 people were observed. The affidavits also indicate that on one occasion, twenty motor vehicles were parked on the shoulder of the road and one hundred vehicles on the premises.

The record shows that Tanaka's consists of five acres of land in Waianae. There is nothing in the complaint to indicate that the crowds, the traffic, or the activities constitute public nuisances as defined above.

## VIII.

### CONCLUSION

In the context of the law of nuisance abatement in this jurisdiction dismissal of the complaint was correct except as to the alleged zoning violation. Insofar as that alleged violation is concerned, the order of September 29, 1983 is reversed. In all other respects, the orders of dismissal are affirmed. On remand, however, opportunity should be given to the State or County, through their proper administrative or legal officers, to move to enter the case as plaintiffs, *see* Rule 17(a), HRCP, and to move to amend the complaint to make the allegations necessary to show their right to abatement of the various activities which constitute public nuisances in fact. *See* Rule 15(a), HRCP.

Reversed in part and affirmed in part, and remanded for further action consistent with this opinion.

*Shirley Smith,* Deputy Prosecuting Attorney, (*Darwin L. D. Ching,* Deputy Prosecuting Attorney, with her on the opening brief) City id County of Honolulu, for plaintiff-appellant.

*Anson O. Rego* for defendants-appellees Thomas Key, Estrelio Pablo, Alfred Abihai, Andrew Marras, William Silva, Momi Florendo, Mae Galinato, Raymond Yamashita, and Harold Viela.